CITY OF TULSA et al. v. WESTON et al.

No. 13313—Opinion Filed May 27, 1924.

Rehearing Denied Sept. 16, 1924.

(Syllabus.)

1 Municipal Corporations — Public Improvement — Validity of Contracts — City Charter of Tulsa.

Sections 1 and 5 of the city charter of the city of Tulsa, Okla., required no preliminary estimate of the cost of a public improvement proposed by a resolution of necessity, as therein authorized; neither do said sections require any notice to be given the property owners in the improvement district anterior to the advertisement for bids, the acceptance thereof, and the execution of a contract for the improvements; and the failure of said sections to so provide does not render the contract made after compliance therewith void, as violative of the due process of law provisions of either the state or the federal Constitution.

2. Same — Notice to Property Owners — Hearings—Compliance with Charter—Paving.

Section 7 of art. 9 of the charter of the city of Tulsa requires notice be given by publication and mailing to each proprietor in the pavement district before the assessing ordinance is passed by the commissioners, which notice must give the names of the owners of the respective lots, the front feet of each, the amount for which each lot is to be impressed with a lien, proportioned on the total cost of the improvements, and which notice is required to state a date on which the commissioners will hear any or all the property owners who file written protest, going to matters in said section authorized to be heard, to wit, the regularity of the proceedings, the proportion of the benefit to the respective lots, and the just, fair, and equitable proportion each lot should bear, and manner of making the improvements. Where on the date set for hearing, after such notice given, if no protests are filed going to such matters, and the property owners are advised by the commissioners as to the extent the commissioners can hear them, but state they do not desire to be heard on such matters, but on the high cost of the work set out in the contract, there is nothing before the board of commissioners for hearing, and their duty was to pass the assessing ordinance, as required in said section 7. The notice provided for in this section goes only to the jurisdiction or authority to pass an effective assessing ordinance.

Record examined, and held, in the instant case, that the provisions of article 9 of the Tulsa charter were substantially complied with, that the contract was valid in its entirety, and the work having been completed in accordance with the contract, and accepted by the board of commissioners, the contractor is entitled to have the tax bills issued and delivered.

3. Same—Paving Assessments.

A contract entered into by the city of Tulsa, through its proper officers, after complying with the express requirements of sections 1 and 5 of art. 9, for the construction of public improvements by said sections contemplated, is a valid and enforceable contract in the absence of fraud, collusion, or mistake, and it is the duty of the city commissioners to levy an assessment against the property of each proprietor in the district improved, for the proper proportionate amount each lot should bear, measured by the approved contract price after the notice and opportunity to be heard, as provided in section 7.

4. Same — Necessity for Notice and Hearing.

The notice and hearing provided by section 7 of article 9 is only prerequisite to the jurisdiction or authority to pass the assessing ordinance or resolution which fixes a lien upon each lot in the paving district, at the amount determined to be its fair and equitable proportion of the whole contract cost of the improvement.

5. Same—Value of City Engineer's Service as Item of Cost.

A reasonable charge for engineering,

which includes making plans and specifications, surveying, inspecting the materials going into the pavement, superintending the construction, etc.; constitutes a proper item to be included in computing and assessing the whole cost of the improvements, even though the engineer is employed by the city at a salary, and the amount is to be paid into the city treasury, under ordinance. The city having the right to reimburse itself for all expenses it may incur, 5 per cent. fixed by ordinance for such service being found fair and reasonable, and there being no finding that this amount would more than reasonably cover the cost of such work to the city in the instant district, the intention to include such amount in the assessment does not warrant an injunction.

### 6. Same—Cost of Publishing Notices.

The actual cost of publishing the notices required by the charter, incident and necessary to the inprovements, is a proper charge to be taken into consideration in computing and assessing the whole cost against the property benefited.

### 7. Disposition of Case.

Record in the instant case examined, and held, the judgment of the trial court be reversed, with directions to enter judgment dissolving the injunction and dismissing plaintiffs' petition, for want of equity.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by Beatrice J. Weston and others against the City of Tulsa and others. Judgment for plaintiffs, and defendants bring error. Reversed.

I. J. Underwood, C. A. Loomis, Randolph, Haver & Shirk, M. A. Breckinridge, Thos. C. Swanson, Horace S. Oakley, John R. Woodward, and G. A. Paul, for plaintiffs in error.

Louis W. Pratt, Blake & Fleming, and F. V. Westhafer, for defendants in error.

BRANSON, J. The action on which the judgment in this cause was predicated, was begun on the 27th day of January, 1922, by the plaintiffs, Beatrice J. Weston, E. V. Raper, H. E. Dowd, Oliver W. Culver, C. R. Loomis, Sr., Alice McDaniels, John Q. Chambers, and George B. Stanley, filing a petition in the district court of Tulsa county, Okla., against the city of Tulsa, Okla., T. D. Evans, mayor of the city of Tulsa, Okla., H. F. Newblock, O. A. Steiner, and J. M. Adkison, commissioners, Mrs. Frank Seaman, city auditor, and Tibbets & Pleasant, a copartnership, composed of Tibbets and Pleasant, paving contractors. Subsequently thereto, an amended petition was filed by Beatrice J. Weston, E. V. Ra-

per, Edna B. Loomis, A. W. Severs, Marie Travis, Brady-Wright Addition Company, a corporation, J. D. Scott, Lewis A. Leonard, F. E. Striker, Ida Lewkowitz, G. A. Rutherford, Vandever Investment Company, a corporation, Charles L. Uptgraft, John Q. Chambers, Herbert Storck, Oliver W. Culver, H. E. Dowd, and Olive Palmer, as plaintiffs, and city of Tulsa, a municipal corporation, T. D. Evans, mayor, O. A. Steiner, commissioner of streets and public property, C. S. Younkman, commissioner of water and sewers, H. F. Newblock, commissioner of finance and revenue, J. M. Adkison, commissioner of police and fire, Mrs. Frank Seaman, city auditor, Tibbets & Pleasant, Inc., a corporation, and Southern Surety Company, a corporation, and C. E. Griggs, city engineer, as defendant. To the amended petition the officers of the city, Tibbets & Pleasant, and the Southern Surety Company, filed answer, to which the plaintiffs filed reply.

The substantial and vital parts of the pleadings will be set out herein, to the end that the issues raised may be clearly understood. The lawsuit grows out of a paving contract, entered into on the 26th day of April, 1921, with the defendants, Tibbets & Pleasant, Inc., by the city of Tulsa, under which contract the said defendants agreed and bound themselves, under the conditions of said contract, to pave a certain street in the city of Tulsa, which had been designated as paving district 297 of said city. Plaintiffs' amended petition stated in effect:

That plaintiffs were property owners in the city of Tulsa, and residents of said city, and that the city was duly incorporated under the laws of the state of Oklahoma, and that the individual defendants named as officers were officers of said city, and that Tibbets & Pleasant, Inc., were paving contractors, and that the defendant the Southern Surety Company, was a corporation engaged in executing surety bonds, and that improvement district 297 embraced "Easton Court (Columbia) from the east line of Xenophon avenue to the west line of Union avenue, in said city of Tulsa;" that the said contract provided for the payment of said district with vibrolithic concrete pavement; that it was the duty of the defendant Griggs, as city engineer, to at once prepare a written statement, after the execution of the contract, containing the names of the owners of the property abutting upon the street in said district, the number of front feet owned by each property owner, with an estimate of the total cost of the improvements of the district, which statement

should also show the proportion and amount of such total cost to be assessed against the property of each owner; and that it was the duty of the defendants the board of commissioners of the city of Tulsa to give the notice provided for and hereinafter set out, of the determination of said board to assess the cost against the property in the district, and setting a date for hearing thereof, to the end that the property owners should have an opportunity to file their objections as to matters affecting the property, and the benefits thereto of the improvements, or any irregularity or invalidity in any of the proceedings in reference to the making of the improvements, and to be heard thereon, and to the further end that they might bring a suit to contest on any ground the validity of the proceedings that may have been had, and that the defendant Griggs, as city engineer, failed, neglected, and refused to prepare such statement, and that the board of commissioners neglected and refused to give such notice and afford such hearing until after the work was completed and accepted, and plaintiffs were thereby kept in ignorance of the facts of the alleged cost of said improvements, and the amount the commissioners determined to assess upon the property of the plaintiffs in said paving district; that the amount proposed to be assessed included certain illegal, unauthorized, and erroneous charges against the property of the plaintiffs; that the price at which the assessment was intended to be made was unreasonable and excessive.

Thereupon they specifically plead:

"8  That the contract for the pavement of Easton Place in district 297 and in all the other districts above mentioned, required the contractor to maintain the work in good condition for 5 years, at the cost of the contractor. The separate cost of such maintenance is not segregated, but is included in the assessment sought to be imposed upon the property abutting upon the streets and avenues in the said district. Whereas, the maintenance of the said street pavement is a proper charge against the city at large, and an illegal and erroneous charge is thereby sought to be imposed upon the plaintiffs, and other property owners in the district. * * * That the further charge against the property owners in district 297 * * * of 5 per cent. of the contract price for engineering for the said improvements, amounts to about $900, and in district 297, * * * is illegal, and not a proper charge against the plaintiffs and other property owners to be assessed therefor, as the surveying and engineering of the improvements were performed by the engineer of the city, and his assistants, who were appointed for a definite period, at a fixed salary, which the law requires to be paid out of the general funds of the city, and the reasonable cost of such surveying and engineering cannot be ascertained and assessed upon the abutting property as a necessary expenditure for the improvements. That the expenditure of any such sum for surveying and engineering in the district * * * was far in excess of any possible requirements in the performance of the work called for by the resolutions and contracts relating to the improvements.

"9. That the defendant, C. E. Griggs, city engineer, prepared in advance of the advertisement for bids for the work in district 297 * * * an estimate of the cost of the work, which was not based upon a cash basis, or on special tax warrants at par, but upon the practice of selling such warrants at a large discount, and that said engineer's estimates were in each case from 15 to 25 per cent. above the estimated cost of the work, if paid for in cash, and plaintiffs allege and charge that said estimate was padded, for the purpose of enabling contractors to bid on a basis of taking special tax warrants or first liens against the property to be assessed, and disposing of the same at a large discount, thereby creating an excessive, usurious, illegal and void charge or lien against the property of the plaintiffs, and other property owners whose property is sought to be charged with this assessment; that said city engineer entered into collusion with the contractors for paving in the city of Tulsa and deliberately, knowingly, fraudulently and collusively prepared his estimates for improvements ordered by the board of commissioners, with the intent and purpose of enabling the contractors to dispose of the special tax warrants at a large discount, and that the estimates of the engineer in the districts above mentioned as to the cost of the work to be done were intentionally, knowingly and fraudulently false, excessive, fictitious and in plain violation of his duty to the owners of property to be affected by the charges and costs of the improvements.

"10. That the paving contractors with whom contracts were made by the defendant, the city of Tulsa, at, before and after the contract for the paving improvements in district 297 * * * were awarded and let, unlawfully and fraudulently conspired to and with each other, not to compete or enter into fair competition for the securing of contracts with the city for paving and other public improvements, but to parcel out the work among themselves at approximately the extravagant, excessive and burdensome costs estimated by the city engineer in their favor, as hereinabove alleged and shown, and that in consummation of such collusive, unlawful and fraudulent conspiracy to defraud property owners and taxpayers of the city of Tulsa and the plain-

tiffs and others, the defendant Tibbets & Pleasant, Inc., did obtain the contracts in improvement districts 294 to 305, inclusive, while their pretended competitors furnished straw bids, to make it appear that there was competition in the bidding for said work. * * * Plaintiffs allege and charge that the aforesaid contracts in district 297 and the districts contiguous thereto awarded to the defendant Tibbets & Pleasant on the 22nd day of April, 1921, were obtained by collusion and fraud on the part of said contractors, and the other bidders, * * * and by collusion on the part of the defendant C. E. Griggs, city engineer of the city of Tulsa, in estimating the cost of the said improvement and improvements at grossly excessive figures on each and every unit of work to be performed, by reason of which the plaintiffs were attempted to be defrauded and their property charged with a fraudulent and illegal assessment, whereby they will suffer irreparable injury and damage, for which they have no adequate remedy at law. * * *

"11. That if the threatened assessment of their property were merely irregular and erroneous in some particulars as hereinbefore alleged and shown, and not unlawful, collusive, fraudulent and void for the unlawful conspiracy, collusion and fraud alleged and shown in the last two preceding paragraphs of this petition, plaintiffs would, and so far as the allegations of irregularity and error in the said assessment alone are concerned, the plaintiffs do hereby tender and offer to pay or have their property assessed for the fair and reasonable value of the improvements made, but demanding at the same time 'the full measure of relief to which they are justly entitled by a decree and judgment of this court by reason of the fraud and collusion between the contractors as hereinabove alleged and the city engineer which plaintiffs allege and charge renders the said contract for the vibrolithic concrete pavement in improvement district No. 297 wholly void.

"Wherefore, the plaintiffs pray that the said contract between the defendant city of Tulsa and the defendants Tibbets & Pleasant, Inc., as contractor, and Southern Surety Company, as surety, for vibrolithic concrete pavement on Easton Court (Columbia), from the east line of Zenophon avenue to the west line of Union avenue in the city of Tulsa, Okla., in improvement district No. 297 be vacated, annulled, set aside and forever held for naught for fraud and collusion practiced in its procurement, and that during the pendency of this action, the defendant, city of Tulsa, its mayor and commissioners, officers, attorneys, agents, servants and employes, be temporarily enjoined and restrained from passing any resolution or ordinance levying, assessing, or otherwise imposing any charge, assessment, or special paving tax upon the property of the plain-

tiffs or others in said improvement district No. 297, for the alleged costs and charges for the work under said contract, and from issuing any special tax bonds or warrants for the purpose of paying such alleged cost and charges, and that upon final decree and judgment the said defendants be permanently enjoined and restrained from the levy and collection or any attempt or proceeding to collect any such charge or assessment, and that the plaintiffs have such other and further relief as to the court shall seem just and equitable, and for their costs and disbursements of this action."

The defendant city of Tulsa and its said named officers, and the defendant Tibbets & Pleasant, Inc., and the Southern Surety Company, a corporation, filed separate answers. The answer of the city and its officers denied the allegation of the plaintiffs' petition, except as expressly admitted, and further set up:

"And the defendants allege that on the 22nd day of March, 1921, the board of commissioners of the defendant city of Tulsa, Okla., passed a resolution declaring it necessary to improve certain streets and avenues in said city, including that portion of Easton Court (Columbia) from the west line of Union avenue to the east line of Zenophon, except intersection with Waco avenue; and said resolution now appears on file and of record in the office of the city auditor of the said city of Tulsa, and is hereby referred to and made a part of this petition; and said resolution was duly published in the Tulsa Daily World in the issues of that paper under date of March 26, 1921, and that section 6 of said resolution is as follows:

" 'Section 6. That the 29th day of March, 1921, at 9 a. m., at the assembly room in the City Hall of the said city of Tulsa be, and the same is hereby set as the date, time and place for the hearing of any and all protests and objections to the making of said improvements and to the plans for and methods and materials to be used in making the same; and any such objections or protests not made in writing on or before the said 29th day of March, 1921, at 9 a. m., shall be deemed waived.'

"And these defendants state that no protests or objections to the making of the improvements described in said resolution, or to the plans for or methods or materials to be used in making the same, were made: and no objections or protests invited by said resolution were made in writing on or before the 29th day of March, 1921, at 9 o'clock a. m., and all such objections and protests as might have been made at that time are waived. And these defendants allege that pursuant to said resolution, and under date of April 5, 1921, the defendant, city of Tulsa, caused certain advertisement for bids to be published, giving notice that sealed

bids would be received at the office of the city auditor of said city until 5 o'clock p. m., Monday, April 18, 1921, for furnishing material and performing the work necessary in paving and otherwise improving portions of certain streets and avenues in said city of Tulsa, described in said advertisement, and including that part of Easton Court last above described.

"4. And the defendants allege that pursuant to said advertisement for bids, the defendant, city of Tulsa, received bids, and on the 19th day of April, 1921, the said city of Tulsa, by its board of commissioners, duly considered all bids received; and thereafter, duly and legally awarded the contract for the work in said advertisement described, on the last above described portions of Easton Court, and a contract and bond covering said work was duly executed and duly approved by said board of commissioners by resolution duly adopted the 27th day of April, 1921, which resolution now appears on file and of record in the office of the city auditor of the city of Tulsa; and a copy of said contract and the statutory bond executed by the defendant, Southern Surety Company, as surety, are now on file in the office of the city auditor of the said city of Tulsa, and these defendants hereby refer to the aforesaid resolution, advertisement, contract, and bond, and embody the same herein with the same force and effect as if they were in this answer set out in full.

"5. And the defendants further answering allege that the specifications for the improvements in said street improvement district No. 297 were duly and legally prepared and duly and legally approved by the defendant, city of Tulsa; that a written statement containing the names of the persons, firms or corporations or estates owning property abutting upon the sections of the street, avenue or alley to be improved in said street improvement district No. 297; the number of feet owned by each; and setting out the estimate of the total cost of such improvement, and the proportionate amount of such costs to be assessed against each piece of property, was duly and legally prepared by the city engineer, and thereafter, was duly examined by the board of commissioners of the city of Tulsa, and by said board was duly and legally approved by resolution duly and legally adopted on the 27th day of December, 1921, which said resolution further directed the city auditor to give notice as provided in section 7 of Article 9 of the Tulsa city charter of a hearing to be had on the 13th day of January, 1922, at 9 o'clock a. m., on all objections to proposed assessments, improvements or materials in reference to the same; and said resolution was duly and legally published in the Tulsa Daily World, and in the issue of said paper dated January 3, 1922; and said resolution is now on file and of record in the office of the city auditor of the city of

Tulsa, Okla., and hereby is referred to and made a part of this answer.

"6. And the defendants further state that pursuant to the last above mentioned resolution, the city auditor gave due and legal notice of the time and place of the aforesaid hearing by publishing the same in the Tulsa Daily World in the issues of said paper dated January 3d, 4th, 5th, 6th and 7th, 1922, and a copy of said notice is now on file in the office of the city auditor of the city of Tulsa, and hereby referred to and made a part of this answer; and said notices were duly mailed as required by the city charter.

"And the defendants allege that at the time and place of said hearing, the protest and objection of Oliver W. Culver, E. V. Raper, and Beatrice J. Weston et al., was duly heard and considered, and by the board of commissioners of the said city of Tulsa, with all members present and voting, was unanimously overruled, and said protest is in words and figures as follows, to wit:

"January 11, 1922.

" 'To the Honorable Mayor and
" 'Board of Commissioners of the
" 'City of Tulsa, Oklahoma.

" 'Gentlemen:

" 'We, the undersigned property owners, living in that part of Tulsa known as Irving Place and Park Hill addition, hereby enter protest regarding the price advertised in the Tulsa Daily World for street paving in this district, and demand an explanation of the prices advertised and an adjustment to a reasonable basis, as we consider the prices as set forth in the above mentioned advertisement entirely too high and unreasonable; and further request you to inform us if this paving was properly advertised and the contract for same let according to law.

"And the defendants state that said protest and objection was without merit, and was legally and rightfully overruled by the said board of commissioners; that no other protest or objection in connection with improvements in street improvements district No. 297 was filed or presented, and that all other objections and protests which might have been made at said hearing, and any and all protests and objections which might then have been made by any other than the signers of the aforesaid protest, have been waived.

" 'And the defendants state that at all times since the adoption of the charter of the city of Tulsa in the year 1909, every board of commissioners of said city, every city engineer, and every city attorney employed by said city of Tulsa, and every purchaser of tax bills issued to pay the cost of paving in said city, and every attorney for any such purchaser, have construed and interpreted section 7 of art. 9 of the Tulsa city charter to require a hearing on protest and

objections on all matters affecting such improvements, and the regularity of the proceedings with reference thereto, to be had before the passing of the assessing ordinance; and have construed and interpreted said charter not to require notice of such hearing, or the giving of such notice, before the commencement of the work, or at any time before the completion of the work; and relying upon this universal interpretation of said charter provisions, millions of dollars have been invested in tax bills issued in payment for paving in the city of Tulsa; and these defendants allege that such interpretation is correct, and, even if the charter provisions were ambiguous, the aforesaid interpretation, by reason of its universality, ought to be accepted and followed by this court.'

"7. And the defendants further state that all things required by law to be done in order to entitle these defendants to have the assessments levied to pay the costs, as shown by the above-mentioned engineer's estimate, of improvements in street improvement district No. 297, have been done; and that these defendants have fully and completely performed their said contract with the city of Tulsa, and the improvements and work therein provided for have been duly and legally inspected, examined, accepted and approved by the city engineer and board of commissioners of the city of Tulsa; and these defendants are entitled to have an assessing ordinance passed by the city of Tulsa, and tax bills issued pursuant thereto for the payment of the obligations of the said city of Tulsa under the aforesaid contract.

"8. And the defendants expressly deny any fraud, conspiracy or wrong of any character or kind in connection with the bidding for the aforesaid work, or with the taking or performing of the aforesaid contract.

"And the defendants state that the mayor and board of commissioners of the city of Tulsa, on the 18th day of June, 1920, duly passed and approved, and published ordinance No. 2083, which said ordinance provides, among other things, as follows:

"'Section 1. It shall be the duty of the city engineer of the city of Tulsa, Okla., to add five per cent. (5%) to the total amount of the final estimate of all the costs of all public improvements hereafter contracted for in said city of Tulsa, Okla., as engineering fees and said engineering fees shall be plainly specified in the final estimates filed with the city auditor in arriving at the final and total amount of the costs of any and all public works.

"'Section 2. The said city engineer shall obtain from the city auditor of said city and shall add to the cost of construction of any and all public improvements done under the jurisdiction of the city of Tulsa the actual costs of any and all advertising necessary in letting or properly carrying on, executing, or

contemplating any public work as advertising fees, whether such work is to be paid for by the city of Tulsa, the property owners, or whether such costs are assessed against any property therein.

"'Section 3. All contractors performing or doing such public improvements shall, before the delivery of any tax bills, warrants or money due them, pay or cause to be paid to the city of Tulsa, in cash, an amount sufficient to satisfy the above mentioned expenses, including both engineering fees and the advertising fees, and no official of said city shall have any authority to accept any tax bills or other evidence of indebtedness in payment of the above mentioned fees and expenses.'

"And said ordinance No. 2083 is now, and at all times mentioned in this answer has been, a valid, subsisting ordinance, and in full force and effect.

"9. And the defendants allege that the plaintiffs, and each of them, knew prior to the commencement of said work that the same was contemplated; and the necessary plans, plats, profiles, specifications and estimates of costs provided for in the aforesaid resolution approved on the 22nd day of March, 1921, were duly and legally prepared by the city engineer of city of Tulsa, and returned to the board of commissioners of the city of Tulsa on or before the 29th day of March, 1921, as in said resolution directed; and were open to public inspection, and from them the plaintiffs, or any of them, or any of the property owners in said improvement district No. 297, could have computed and estimated the cost of said improvements to be assessed against his property; or, if he had requested the city engineer to compute the estimated cost of said improvement against his said property, such computation would have been made by him by the said city engineer; and with the exercise of a reasonable interest in the proposed improvement, any of the plaintiffs or any of the property owners in said improvement district No. 297, would have been informed actually, and was constructively informed, of the estimated cost of said improvement as a whole, and of the estimated cost to be assessed against any piece of property in said district, on the 29th day of March, 1921 —long prior to the letting of the contract for said improvements, and long prior to the commencement of work thereon; and said plaintiffs knew of the execution of the contract for said paving; knew when the work was commenced; and knew throughout the time in which said work was progressing that the work was being done; and notwithstanding the said plaintiffs, and each of them, stood by and permitted said work to proceed and at no time made any objection to said work, or took any steps to stop the same, or to question the legality of the estimate, bids, contracts, or of any of the proceedings leading up to said work until the improvements had been completed and

the plaintiffs and their property had received and were enjoying the benefits of said improvements; and by reason of the facts aforesaid, the plaintiffs and each of them, waived all objections and protests and are estopped from maintaining this action and from now questioning the validity of the proceedings, contracts, assessments and tax bills relating to the said improvements."

The separate answer of the defendants Tibbets & Pleasant, Inc., and Southern Surety Company denied the allegations of plaintiffs' petition, except as specifically admitted, and further answered in substance, language, and effect the same as the answer of the city and its officers. To these respective answers, the plaintiffs filed a reply, which, omitting the formal part, is as follows:

"1. That the allegations of paragraphs three, four, five, six and seven of said answer do not constitute due and legal compliance with the mandatory provisions of the Constitution and laws of the state of Oklahoma and the charter of the city of Tulsa so as to confer jurisdiction upon the defendant city of Tulsa, to pass the proposed ordinance, levying, laying and assessing a charge of $18,599.32 against the property on both sides of Easton Place between Union avenue and Xenophon avenue, in the city of Tulsa, and allege that the passage of said proposed ordinance, pursuant to the various acts on the part of the city commission and city engineer of the city of Tulsa, as set forth in said answer, unless enjoined by an order of this court, would constitute the taking of plaintiffs' property and the property of other property owners in said district No. 297, without due process of law, in violation of their rights under the 14th Amendment to the Constitution of the United States.

"2. Plaintiffs further allege that Tulsa city ordinance No. 2083 set forth in paragraph No. 8 of said answer is unlawful, invalid and void and inoperative to authorize the levying of a special assessment upon the property of plaintiffs and other property owners in said improvements district No. 297, for the reason that said ordinance purports to authorize the levying of a special tax upon plaintiffs and other property in said district for raising of revenue for the general expenses for the government of the city of Tulsa, and is in conflict with the Constitution and laws of the state of Oklahoma.

"3. Plaintiffs further deny the allegation of the 9th paragraph of said answer that they had any knowledge prior to the commencement of work in said district No. 297, as to the actual cost of improvements to be made as affecting their property, or that such information actually or constructively given to them at any time prior to the alleged completion of said work and its acceptance by the city engineer, but on the

contrary allege and state that no legal publication or notice was given them or any of them as to the estimated cost to be levied, laid or assessed against their said properties, respectively, in compliance with the requirements of the charter of the city of Tulsa, and that the facts in regard to the costs of said improvements were repeatedly misrepresentated to them by the person or persons circulating the petition for the proposed improvement or concealed from them by the city engineer when such information was requested of him.

"4. Plaintiffs further allege that work under said contract was not actually begun until sometime in November, 1921, and when finally commenced it was in progress for not more than one (1) week or ten (10) days, and that as soon as the true facts became known to plaintiffs and other property owners in reference to the excessive cost of said improvements, and the misrepresentations which had been made to them in reference to the same, that a protest was circulated and presented to the city commissioners; that at no time have the plaintiffs stood by and permitted said work to progress after the facts in reference to it were known to them, without a vigorous protest on their part against the same."

A temporary injunction was issued by the trial court effective until trial, when the same was made in part permanent, and in part conditionally permanent.

The final judgment of the trial court rendered in April, 1922, is:

"Wherefore, it is ordered, adjudged, and decreed, on this 9th day of March, 1922, that the defendants and each of them be and they are hereby perpetually enjoined from levying any tax upon the property of the complainants until a hearing has been had as to the amount of benefits to the property to be affected by said special assessments and that the defendants and each of them be and they are hereby perpetually enjoined from including in any assessment hereinafter made against the property of the plaintiffs herein any sum whatsoever for discount on tax bills, engineering fees or printing and advertising costs; and that plaintiffs have judgment against the defendants for costs: to all of which the said defendants and each of them except and give notice in open court of an intention to appeal from said judgment to the Supreme Court of the state of Oklahoma, and ask that the clerk note the giving of said notice on the trial docket of the said court."

The record discloses many undisputed facts, important among which are: That on the 22nd day of March, 1921, the board of commissioners of the city of Tulsa passed a resolution by a unanimous vote, declaring the necessity of, and providing for improvement of, the street embraced in paving dis-

trict 297, by grading, paving, curbing, guttering, and draining the same, the pavement to be made of vibrolithic concrete, and that the entire cost of the improvement should be apportioned and levied and assessed against the abutting property liable to the assessment therefor, in accordance with article 9 of the charter of the city of Tulsa. The resolution of necessity further provided that the engineer should prepare plans and specifications and estimate of cost, and return the same to the board on or before the 29th of March, 1921 (with a further provision that on said last-named date, and at the assembly room in the City Hall of the city of Tulsa, any property owner owning property in said district could be heard as to all protests and objections to the making of the proposed improvements, but the trial court found, and it is not by any cross-petition drawn in issue here, that this part of the resolution of necessity was not required by the city charter, and that the charter does not require any hearing upon the question of benefits prior to the completion of the work, and that the notice given on the 26th day of March, 1921, for protests to be filed by the 29th of March, was of no force and effect). That the resolution of necessity was duly and regularly passed by a unanimous vote of the board of commissioners, and duly and regularly published in the Tulsa Daily World, a newspaper of general circulation in the city of Tulsa and Tulsa county, Okla., in all respects as provided by the charter; that on the 5th day of April, 1921, the city auditor (this being under the charter the proper officer) of the city of Tulsa caused to be prepared a notice for sealed bids for the proposed improvements set out in the resolution of necessity, and caused the same to be duly published as provided by the city charter in the Tulsa Daily World, and the court found, which is not drawn in question, that the resolution of necessity, the advertising for the bids, were regular in all respects; that thereafter, and on the 22nd day of April, 1921, the court found that in accordance with the charter of the city of Tulsa, the said commissioners of the said city being in regular session, did by unanimous vote accept and approve the bid for making the improvements in district 297, filed by the defendant Tibbets & Pleasant, Inc., and based upon said bid, the said commissioners did award to the said Tibbets & Pleasant, Inc., the contract for making the improvements, as per the plans and specifications theretofore approved; that on the 26th day of April, 1921, the board of commissioners of the city of Tulsa in open session, and by a unanimous vote, accepted and entered into a contract, which the record discloses was duly and formally executed, as provided by the city charter, with the defendant Tibbets & Pleasant, Inc., which contract was accepted and approved by a unanimous vote of the board of commissioners; that a bond, as provided by the city charter, executed by the defendant the Southern Surety Company, a corporation, as surety, for the compliance with each and every provision of the contract, was duly accepted and approved, which bond, in addition to the other requirements for carrying out the agreement to improve the district, also provided for proper maintenance thereof, as required by the charter, for a period of 5 years; that the work of improving said district was completed by the contractors by about the 1st of December, 1921, and said work was accepted by the city engineer about December 20, 1921, and on the 27th day of December, 1921, the board of commissioners of the city of Tulsa duly and regularly adopted the report of the city engineer approving the work in said district, and duly adopted and approved by a unanimous vote a compilation made by the city engineer showing a full description of all the property included in said paving district, by lots and blocks, with the name of the owner of each lot, the number of front feet of each lot, and the amount proposed to be assessed against the same, and caused the said compilation showing all of said facts and figures, and the amount proposed to be assessed to meet from the whole district the contracted price of the improvements, and caused the same to be duly published in the Tulsa Daily World, and duly mailed to each property owner, liable to assessment, in strict compliance with the provisions of the city charter governing the same, in which mailed notice and published notice the property owners were advised that they would have a right to file in writing in the office of the city auditor, on or before the 13th day of January, 1922, any protests or objections, and that the same should be heard on the 13th of January, 1922, and that unless so filed, the same should be deemed waived; that on the 11th day of January, 1922, certain of the said property owners filed an instrument signed by them, as follows:

"We, the undersigned property owners living in that part of Tulsa known as Irving Place, and Park Hill additions, hereby enter protest regarding the price advertised in the Tulsa Daily World, for street paving in this district, and demand an explanation of the prices advertised, and an adjustment to a reasonable basis, as we consider the price as set forth in the above mentioned advertisement entirely too high and unreason-

able, and further request you to inform us if this paving was properly advertised, and the contract for same let according to law."

That on the date set forth for hearing, the board of commissioners, in regular session, had the same presented, and referred the same to the city engineer for report, and adjourned the hearing until the 24th day of January, 1922; that at the hearing on the 13th of January, 1922, and the adjourned hearing on the 24th of January, the property owners appeared and protested against the high cost of the improvements in the district, as to which the trial court found:

"That the said protestants were then and there informed by the said city commissioners that except as to the matter of adjustment, and as to the matter of checking the figures in the engineer's final report, that the board was without power or authority to grant any relief in the premises; that the work had been completed as per contract, and had been accepted by the board of city commissioners."

The court found as facts that in the compilation above mentioned, made by the city engineer, as to the lots, blocks, the front feet, and the owners thereof in the said improvement district, and the proportion of the contract price, the measurement and computation and the application thereto of the prices fixed in the contract were substantially correct, and that the work of improvement in said district was done in substantial compliance with the plans and specifications on file, and the contract entered into between the defendant Tibbets & Pleasant, Inc., and the city of Tulsa, and that there was a failure on the part of the plaintiffs to establish by competent evidence the allegations of their petition as to fraud and collusion with reference to the various matters complained of.

But the court found that in the preparation of the estimate the city engineer in his estimate of cost included as a part of the estimate of cost for said improvement 15 per cent. to cover discount at which tax bills issued under the city charter to pay for the pavement sold on the market, and that 5 per cent. of the total contract price was included to cover engineering fees. The court further found, however, that the 5 per cent. engineering fee had for a long period of time been assessed and collected against the property in special tax cases in the city of Tulsa, such as the one here in question, and that 5 per cent. of the total of the cost of the work is a fair and reasonable charge for the engineering work necessary to perform the improvements.

The foregoing, we think, sets out substan-

tially not only the important, undisputed facts as disclosed by the record, but in substance the important findings of fact as made by the trial court on which the judgment, supra, was predicated.

The parties will be referred to herein as plaintiffs and defendants, as they appeared in the trial court, although the defendants in the trial court are the plaintiffs in error here.

We will not discuss the numerous assignments of error otherwise than to the extent they raise the questions herein disposed of.

It must be noted that the judgment of the trial court did not grant the prayer of plaintiffs' petition, and on what theory the judgment was entered upon the pleadings and the record in this cause, we must try to ascertain from a fair consideration of the law as applicable to the facts disclosed. Apparently from the brief of the plaintiffs, they fail to agree that the judgment of the trial court is correct, though they have filed no cross-petition in error, and we will later advert to and quote from the brief of the plaintiffs portions disclosing their failure to agree with the judgment of the trial court, which supplement to our mind the argument made by the defendants, that the conclusions of law of the trial court are without warrant in the record.

The judgment as entered by the trial court, when analyzed, falls into three distinct divisions, and for convenience we will designate them hereafter as:

"First Division"—That the defendants are perpetually enjoined from levying a tax upon the property until a hearing has been had as to the amount of benefits to the property to be affected by said special assessment.

"Second Division"—That the defendants and each of them be perpetually enjoined from including in any assessment made any sum whatsoever as discount on tax bills.

"Third Division"—That the defendants be perpetually enjoined from making any assessment covering engineering fees, or for printing and advertising cost.

We will discuss these elements of the judgment entered by the trial court in their order.

### First Division of Judgment.

As the "First Division" of judgment, we are forced to the belief it is based upon the conclusion of law No. 3, which is as follows:

"That on account of the failure of the board of commissioners of the city of Tulsa to give to the owners of the property affected by the proposed tax assessments the

hearing provided in the charter of the city of Tulsa, any proceeding had or attempted to be had imposing a tax on the property would be void and should be stayed by injunction."

We think a fair construction of the amended petition of the plaintiffs is: They contend that the contract entered into on the 22nd day of April, 1921, by the city of Tulsa with the defendant Tibbets & Pleasant, Inc., was and is void in its entirety for want of jurisdiction, and for fraud and collusion by the contractor with other contractors and with the engineer; and as one element of which fraud and collusion, as well as the fruits intended to be reaped thereby, was the inclusion of 15 per cent. in the contract, the amount at which the tax bills to be received in payment for such public improvements sold on the market, and though not in the prayer, unless it be included in the prayer for general relief, plaintiffs contend that the advertising of 5 per cent. to be paid under the contract out of the sale of tax bills, under the city ordinance, requiring the same for engineering fees, etc., was without authority of law, and that the assessment to that extent would be a void assessment, as would likewise the amount of printing and advertising fees incident to the project.

The question presents itself at the inception of the inquiry:

"What hearing the property owners were entitled to have which they did not have in this case, and without which the ordinance or resolution levying the assessment would be ineffective?"

The inquiry into this matter takes us into the contention of the plaintiffs that the contract was void in its entirety for a want of jurisdiction, but we can only consider here, as there is no cross-petition in error, this contention made by the plaintiffs in so far as it may have a bearing upon the kind of notice, and opportunity to be heard, which was in the mind of the trial court as the basis of the first division, supra, of the judgment entered. The contention of the plaintiffs apparently is that some kind of notice for hearing on the amount of benefits to accrue to the whole property in the district was jurisdictional to the power of the commissioners to enter into the contract. If this were true, the judgment of the trial court should have granted the prayer of plaintiffs' petition, and held that the contract was void for want of jurisdiction to enter into the same, and herein lies the confusing contention of the plaintiffs as to the warrant of the judgment entered by the trial

court; for the plaintiffs say on page 42 of their brief:

"In the instant case, the fault is on the part of the city of Tulsa, in that the property owners were not given the notice and afforded the hearing contemplated and prescribed by the charter, until the work was completed and accepted."

And again, on pages 46 and 47 of the brief:

"The city engineer was negligent and derelict in his plain duty to prepare at once a statement and estimate for the information of the property owners, but waited eight months before he disclosed the all important information as to what the improvement would cost the property owners, and then only after he had accepted the work which was begun and rushed to completion during the eight months. The city commissioners contented themselves with the notice to the property owners that they had been assessed for the completed work, instead of giving them the required notice as to the amount that a proposed improvement was estimated to cost, and dismissed them when they appeared to protest, on the flimsy pretext that they (the property owners) were too late to be heard on any objections to the making or cost of the improvement."

And this contention is made, notwithstanding the conclusion of law of the trial court (No. 2) in which the court specifically found as a matter of law "that the charter of the city of Tulsa does not require any hearing upon the question of benefits prior to the completion of the work."

Again, on page 51 of plaintiffs' brief, we find:

"That this failure to grant a hearing was a jurisdictional defect, as has already been discussed. A jurisdictional defect rendering the proceedings void also renders the contract between the city and the contractor and its sureties void. * * * It is submitted that no validity or vitality can now be impaired to it by any subsequent proceeding."

In this quotation from the brief and the argument which follows thereafter, the plaintiffs seem to contend that the whole proceeding was void, and that the judgment of the trial court in the first division, supra, was not the judgment that should have been rendered, and even if a hearing were granted, as apparently was in the mind of the trial court, the assessment then levied would be without force and effect.

And again, on pages 53 and 54 of plaintiffs' brief:

"The jurisdictional defect in the instant case is a defect inherent both in the resolution of necessity and also in the denial of

a hearing on the 13th of January (1922—ours) and subsequent dates, to the date of overruling the protest. The resolution of necessity was void by reason of the inclusion of paragraph 6, giving notice or attempted notice to property owners that all objections or protests to the making of the improvement should be filed on the 29th day of March, and if not so filed, should be deemed waived. * * * The city commissioners did ˙not follow the charter requirements at any stage of the proceedings, from the very beginning, but invented a procedure of their own, and it is now too late to start over again and conform to the required procedure. The resolution of necessity is as defective for the matter which it contained, which did not belong in it, * * * as it would be for the omission of an essential requirement."

And this contention is made in˙ plaintiffs' brief, ˙presumably to justify the character of judgment rendered by the trial court, notwithstanding the trial court found as a matter of law and on which they filed no cross-petition in error in this court:

"That the resolution of necessity, the advertising for the bids * * * were regular in all particulars, and that the charter of the city of Tulsa does not require any hearing upon the question of benefits prior to the completidn of the work, and that the notice or attempted notice given on the 26th of March, 1921 (which was the notice that the property owners could file protest on or before the 29th of March, 1921—ours), was of no force and effect, and wholly void."

The record discloses throughout that the property owners were seeking to have the improvements made, and they say in their printed brief on page 46 "Of course the property owners wanted the street paved."

It is impossible, therefore, to conclude from the brief of the plaintiffs what notice should have been given which was not given, or hearing had which was not had, the failure to give which was the basis of the first division of the judgment, supra, and we must resort to the city charter, which is conceded by all parties to be the exclusive provisions of law governing the rights of the parties touching the questions herein involved. Section 1, of art. 9 of the city charter, provides: .

"When the board of commissioners shall deem it necessary ·to grade, pave, macadamize, gutter, drain or otherwise improve any street, avenue, or alley or any part thereof, within the limits of the city for which a special tax is to be levied, as herein provided, said board shall by resolution declare such work or improvement necessary to be done, which resolution shall be adopted by a majority vote of the board, and the passage of such resolution shall be con-

clusive of the public necessity therefor, and the benefit thereof, and no notice of such action by the board shall be requisite to its validity. Such resolution shall, in general terms, set forth the nature and extent of the improvement or improvements to be made, the section or sections of any public street, avenue or alley to be improved, the material or materials with which the improvements are to be constructed and the method or methods under which the costs of such improvement are to be paid. Such resolution may specify that such improvements may, at the election of the board, be constructed from different material and may specify different or alternative methods of making such improvements, and providing for the payment of the costs thereof. Upon the passage of such resolution it shall be the duty of the city engineer to forthwith prepare specifications for such improvement. which specifications shall embrace the different materials or different plans or methods, under which said improvements or part thereof are to be constructed or paid for, if such different materials or alternative plans or methods of construction or payment are specified in such resolution; and such specifications shall also describe the character of bond or bonds required of the successful ·bidder for the construction of such improvement and ˙the maintenance thereafter, as herein provided. When such specifications have been prepared they shall be submitted to the board of commissioners for its approval. The board shall have power to require of the contractor or contractors to whom the work may be let. a bond for the faithful performance of the contract, and the maintenance of the work in good condi· tion at the cost of the contractor for a term of not less than five years from the completion thereof, and for the maintenance thereof by the contractor. The bonds required by the board of commissioners to be executed by the contractor shall be executed by such contractors to whom the work may be let together with one corporate surety acceptable to said board, which shall be a surety company authorized to do business within the state of Oklahoma."

Section 5 of art. 9 of the city charter provides:

"When specifications have been adopted by the board for contemplated improvements, provided for by the city charter, it shall be the duty of the city auditor, or such other officer as shall be designated by the board of commissioners, to at once advertise for sealed bids for the construction ˙of such improvements, in accordance with the specifications adopted therefor. Such advertisements shall be inserted in a daily paper of general circulation in the city of Tulsa and shall˙ state the time within which bids may be received as prescribed by the board, which shall be not less than ten days nor more than 15 days from the insertion of said advertisement. Bids shall be filed

with the city auditor, or such other officer as the board shall designate, and shall be opened and read in public meeting of the board of commissioners. The board shall have the right to accept such bids as it shall deem most advantageous to the city and the owners of the property abutting on the public street or alley named, to be improved, or may reject any and all bids; and where any improvement is ordered on different specifications, and for the construction, of work or part thereof, with different material, and under different plans or methods of construction, or payment for such improvement, the board shall have full power after opening bids, to select such methods, plans or materials for making such improvements or any part thereof, as it may deem best and to let the work to such bidder and upon such bid as it may select, subject to the terms thereof. No bid shall be amended, revised or changed after being filed. All bids shall be accompanied by a certified check for five per cent. of the amount of such bid as a forfeit, in case of failure of the bidder or bidders, if successful in securing the work bid for, to enter into a contract and bond as required by this charter, for the performance of such work. When bids for such improvements have been accepted by the board. the city shall enter into contract with the contractor or contractors, to whom the work has been let, for the performance thereof. which contract shall be executed in the name of the city by its mayor and attached by the city auditor or such other officer as may be designated by the board, with the corporate seal. The contractor or contractors, to whom such work has been let, shall execute bond or bonds as may be required by the city board and as herein provided. Said bond or bonds. to be approved by the board, if satisfactory."

The first of these sections provides for the resolution of necessity to be passed by a majority of the commissioners, setting forth the character of the improvement to be made, and that the city engineer shall prepare specifications, which shall designate the material, plans, methods, etc., of making the improvements. Section 5 provides that after the specifications have been adopted by the board, the city auditor shall advertise for sealed bids for the construction of the improvements, in accordance with the specifications adopted. It also provides that the board shall have the right to accept such bids as it deems most advantageous to the city and the owners of the property in the paving district, whereupon the city shall enter into a contract with the contractor to whom the work is let, for the performance thereof, the said contract to be executed in the name of the city, by its mayor, attested by the city auditor; the contractor to give bond as required in the charter. There is nothing required in the city charter as to

notice to the property owners up to this point in the proceedings. The trial court specifically found that the resolution of necessity and the notice for bids were in strict compliance with the city charter. The contract entered into is a very lengthy one, its requirements very specific, in that it provides in minute detail the character of material to be used in constructing the pavement in district 297, the amount the contractor is to receive, and the fact that he is to receive his compensation in tax bills provided for by the city charter, the work to be done under the supervision of the city engineer, to be approved and accepted by the mayor and the board of commissioners of the city. The same was entered into on the 26th of April, 1921, and approved by the city council. This is a binding contract. and the liens to secure the tax bills should be fixed by an assessing ordinance. unless it contravenes the due process of law provisions of the Constitution.

In the case of Paulsen et al. v. City of Portland (U. S.) 37 L. Ed. 637, the Supreme Court of the United States, in a case similar to the one at bar, speaking through Justice Brewer, said:

"The city is a miniature state, the council is its Legislature, the charter is its Constitution; and it is enough if, in that, the power is granted in general terms, for when granted, it must necessarily be exercised subject to all limitations imposed by constitutional provisions, and the power to prescribe the mode of its exercise is, except as restricted, subject to the legislative discretion of the council. Thus in the case of Gilmore v. Hentig, 33 Kan. 156, it was held that:

"'Where a statute authorizes a city to provide for the construction of sewers and drains, and to tax the costs thereof upon the adjacent property owners, but does not require that any notice shall be given to the property owners, held, that such failure to require notice does not render the statute unconstitutional or void. * * *'"

Again the court said:

"So, also, the determination of a territorial district to be taxed for a local improvement is within the province of legislative discretion. Willard v. Presbury, 81 U. S.. 14 Wall. 676 (20:719); Spencer v. Merchant, 125 U. S. 345, 355 (31:763, 767.) By the same ordinance the city also provided that the cost of the sewer should be distributed upon the property within the sewer district, and appointed viewers to estimate the proportionate share which each piece of property should bear. Here, for the first time in proceedings of this nature, where an attempt is made to cast upon his particular property a certain proportion of the burden of the cost, the taxpayer has a right to be heard."

In the case of Spencer v. Merchant (U. S.) 31 L. Ed. 765, the Supreme Court of the United States said in the syllabus:

"The question of special benefit, and the property to which it extends, is of necessity a question of fact; and when the Legislature determines it in a case within its general power, its decision is final."

In the body of the opinion the court says:

"The Legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion. Willard v. Presbury, 81 U. S., 14 Wall. 676 (20:719); Davidson v. New Orleans, 96 U. S. 97 (24:238, 241, 242); Hager v. Reclamation District, 111 U. S. 701 (28:569.) If the Legislature provides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law."

In the case of Margaret French et al. v. Barber Asphalt Paving Co. (U. S.) 45 L. Ed. 879, the court in the syllabus says:

"The apportionment of the entire cost of a street pavement upon the abutting lots according to their frontage, without any preliminary hearing as to benefits, may be authorized by the Legislature, and this will not constitute a taking of property without due process of law."

In the opinion, the court quoted at length from the case of Mattingly v. District of Columbia, 97 U. S. 687, which case called in question an act of Congress touching special improvements in the District of Columbia, and in that case the court said:

"It may be that the burden laid upon the property of the complainants, is onerous. Special assessments for special road or street improvements . very often are oppressive. But that the legislative power may authorize them, and may direct them to be made in proportion to the frontage, area or market value of the adjoining property, at its discretion, is, under the decisions, no longer an open question."

To the same effect are the following cases: County of Mobile v. Kimball (U. S.) 26 L. Ed 238; Branson v. Bush (U. S.) 64 L. Ed. 215.

In the case of Withnell v. Ruecking Construction Co. (U. S.) 63 L. Ed. 479, the court in the syllabus said:

"A local assessment for a street improvement, made in accordance with the fixed rule of the charter of the city of St. Louis, Missouri, which was adopted by a vote of the people under state constitutional authority, is legislative in character and requires no preliminary hearing as to the nature and extent of benefits in order to maintain its constitutional validity."

In the case of Hancock v. City of Muskogee (U. S.) 63 L. Ed. 1081, the Supreme Court of the United States, in the syllabus said:

"A municipal ordinance determining that a district sewer shall be constructed, and establishing the boundaries of the district for the purpose of determining what property shall be subjected to the special cost of construction, is not wanting in due process of law merely because there was no previous notice to the property owners nor opportunity to be heard, where full legislative power over the subject-matter has been conferred by the state Legislature upon the municipality, since in such case a legislative determination by the local legislative body is of the same effect as though made by the general Legislature."

See, also, Valley Farms Co. of Yonkers v. City of Westchester (U. S.) 67 L. Ed. 585.

In recognition of the compelling force of the reason given by the authorities above cited, plaintiffs say in their brief:

"We recognize the right and power of the Legislature to predetermine certain questions without giving property owners notice and a hearing thereon, such as the ascertainment of the sum to be raised by a tax and of the benefited district "

Adverting to the provisions of sections 1 and 5, art. 9, of the city charter, we find that there is no provision or notice to property owners, or a right on their part to be heard, prior to the execution of the contract for making of the improvements. In other words, the power to make the contract is predicated upon the resolution of necessity, defining the district, the making of the specifications, etc., by the engineer, and the due publication of notice, and the acceptance and approval by the city council of the bids. Then the contract executed in pursuance of this procedure is a valid contract, unless there be some other provision in the city charter which was not complied with. The only provision of the charter which provides for notice to the property owners and the right to be heard is embodied in section 7 of art. 9, which is as follows:

"7. The contract or contracts for such improvements and the bond or bonds having been executed and approved by the board, it shall be the duty of the city engineer to at once prepare a written statement which shall contain the names of such

persons, firms or corporations or estates that may own property abutting upon the section or sections of the street, avenue or alleys named, to be improved, the number of front feet owned by each, and describing the property owned by each by block or lot, number or otherwise, so describing such property as to identify the same; and such statement shall also contain an estimate of the total costs of such improvement, the proportion and amount of such costs to be assessed against abutting property, the amount per front foot to be assessed against abutting property, and the total estimated amount to be assessed against each owner. Such statement shall be submitted to the board which shall examine the same and correct any errors which may appear therein; but no error, omission or mistake in such statement shall in any manner invalidate any assessment made, or lien or claim fixed thereunder. When such statement has been examined and approved by the board and it shall have determined to assess the costs of such improvements against such property, it shall so declare by resolution, directing notices thereof to be given unto the owners aforesaid by publication for five consecutive days in a daily newspaper of general circulation in the city of Tulsa, and also to mail to such owners a copy of such notice by registered letter deposited in the post office in the city of Tulsa. directed to the address of such owner. if known, or if such address be not known. then to the agent or attorney of such person, if known, provided that the registered letter aforesaid shall be deposited in such post office in the city of Tulsa within ten days prior to the date set for the hearing hereinafter provided for: and provided. further that the method herein prescribed for service of notice by registered letter shall be merely cumulative of the service of notice by publication above mentioned; and provided, that in all cases where personal service by registered letter shall not be obtained, said service by publication shall, nevertheless, be deemed valid and binding. The certificate of the city auditor or such other officer as shall be designated by the board, to the effect that the address of such owner or owners of their agent or attorney is unknown to him, and personal service cannot be had upon them, shall be deemed conclusive of such fact. The notice aforesaid shall state the time of the hearing hereinafter provided for, the general character of the improvements determined upon by the board, the street or part thereof to be improved, and the proportionate part and amount per front foot, of the total cost of the proposed improvements, which it is contemplated shall be assessed against the property, and the owners thereof. abutting upon such street or alley to be improved. On the date stated in the notice aforesaid, or any time thereafter before any special assessment is actually levied, any person, firm or corporation, interested in any property which is claimed to be subject to assessment for the purpose of paying the cost of any improvement, in whole or in part, shall be entitled to a full and fair hearing, before said board, as to all matters affecting such property, or the benefit thereto, of such improvements, or any claim or liability, or objection to the making of such improvements, or any invalidity or irregularity in any of the proceedings in reference to making such improvements, or any other objection thereto. Such person, firm or corporations shall file their objections in writing, and thereafter the board of commissioners shall hear and determine the same. And a full opportunity shall be given to the persons, firms or corporations, filing such objections, to produce evidence, subpoena witnesses, and to appear in person or by attorney, and a full and fair hearing thereof shall be given by the said board, which hearing may be adjourned from time to time, without further notice, and the board of commissioners shall have full power to inquire into, and determine the facts necessary, to the adjudication of such objections, and the ascertainment of special benefits, to which such owners, by means of such improvements, shall make such order in each case. as may be just and proper. Any objections to the regularity of proceedings, with reference to the making of such improvements, as herein provided, or to the validity of any assessment against said property or the owners thereof, shall be deemed waived, unless presented at the time, and in the manner herein specified. The time as set for such hearing shall be not less than ten (10) days from the time of the first publication of such notice. When the hearing above mentioned has been concluded, the board shall by ordinance assess against the several owners of property, and against their property abutting upon the public streets, or alley, or part thereof, ordered to be improved, such proportionate part of the cost of said improvement, as by such board may have been adjudged against such respective owners and their property. Said ordinance shall fix a lien upon such property for the respective amounts to be assessed, and shall state the time and manner of payment of such assessment, and said board may order that the said assessment shall be payable in installments and prescribe the amount, time and manner of paying of such installments, which, however, except as hereinafter provided, shall not exceed ten (10) years and the payments shall not be deferred beyond ten (10) years from the completion of said improvements, and its acceptance by the city. The said ordinance shall also prescribe the rate of interest to be charged upon deferred payments. not exceeding 7 per cent. per annum, and may provide for the maturity of all deferred payments, and their collection, upon default in the payment of any installment or principal or interest. Each property owner, his heirs, assigns

or successors, however, shall have the privilege of discharging the whole amount assessed against him, or any installment thereof, at any time before maturity, upon payment thereof, with accrued interest. Upon the payment by any property owner of his assessment in full, the city shall cause to be executed by its mayor, and duly acknowledged for record, a release of the lien of such assessment."

It will be noted that the trial court found as a matter of law that the compilation designated in said section 7, as we consider, inaptly, as an estimate was not required to be made out prior to the time of the completion of the improvements, but that it should be made out and mailed, including the data required in said section 7, before the passage of the assessment ordinance fixes the amount of lien which secures the tax bill issued against the property of each individual property owner in the improvement district; that said compilation should be approved by the city commissioners, and the date set in order that the property owners should have a right to be heard. And since the trial court held, to which we assent, that all the provisions of the city charter were valid, the injunction against passing the assessment ordinance until a hearing is had must find sanction, if any it has, in this section of the charter.

Among other things, the right to be heard is provided for in said section 7 on the objections there authorized to be made:

"And at such hearing the board of commissioners shall have full power to inquire into and determine the facts necessary to the adjudication of such objections, and the ascertainment of special benefits to such owners, by means of such improvements, and shall make such order in each case as may be just and proper. * * * When the hearing above mentioned has been concluded, the board shall by ordinance assess against the several owners of property and against their property abutting upon the public street or alley or part thereof, ordered to be improved, such proportionate part of the cost of said improvement as by such board may have been adjudged against such respective owners and their property. Said ordinance shall fix a lien upon such property for the respective amounts to be assessed. and shall state the time and manner of payment, etc."

In determining the matter as to which the property owner has a right to be heard under this section of the statute, it is necessary to construct each and every portion of the section together. Plaintiffs seem to contend that the hearing upon the question of benefits to the district, and the right to object to making the improvements, were matters which could be heard under the provisions of this section. To do this would render the paving provision of the city charter inoperative. The essential difference between the state paving law and the provision of the city charter is that under the state paving law a preliminary estimate is required, and notice to the property owners, with the accompanying right to protest against making the improvements. In which event it takes a majority of the property owners in the proposed district to defeat the improvements. If section 7 gives the right to the property owners to defeat the power of the city commissioners to do what sections 1 and 5 expressly authorize, and clearly intend shall be done before the hearing provided for in section 7, then the provisions of sections 1 and 5 could be completely nullified, even after the improvements had been made; for the court found that no notice was required prior to the completion of the improvements. All of the sections taken together and read with the other sections of the same article, in conformity to the rule laid down in 25 Ruling Case Law, page 1008, to the effect that "The court may not, in order to give effect to particular words, virtually destroy the meaning of the entire context; that is, give the particular words a significance which would be clearly repugnant to the statute, looked at as a whole, and destructive of its obvious intent." ([U. S.] 58 L. Ed. 1273), persuades us such a construction is wrong.

We are forced to the conclusion that after the contract is entered into by virtue of the right and authority given on compliance with the provisions of sections 1 and 5, the right to be heard provided for in section 7 is a right which is extended to the individual proprietor as to the proportion of the benefits, and as to the manner of making the improvements, to the end that his property, according to the benefit received from the improvement, shall not be impressed with a lien greater than that of other property of like benefit. This is made manifest and clear by the above quoted portion of said section, to the effect that when the hearing referred to in said section is concluded, the board shall by ordinance assess against the several owners and their property such proportionate part of the cost as by the board may have been adjudged against each owner. There is no provision in the section, taken with the other sections, which can be given fairly any meaning other than that the protest and objection provided for goes solely to the individual, and the proportionate

benefits touching his property in the district.

If under this section a right was given to defeat the improvements, the number of property owners necessary is not designated. The protest of one would operate as effectively to strike down all that had been done as the protest of all.

Construed as we hold, it leaves the paving portion of the city charter a working provision, and not violative of any constitutional provision. Construed as plaintiffs contend, it is not a working provision.

In the case of Weaver v. City of Chickasha, 36 Okla. 226, 128 Pac. 305, and Chickasha v. O'Brien, 58 Okla. 46, 159 Pac. 282, this court held that the contract let after the preliminary requests were complied with, under the state law, could not be avoided, except for fraud, collusion, or mistake.

The contract in the instant case was made after all the preliminary requirements were fully and accurately done.

The record discloses that the property owners were specifically advised on the 13th of January, 1922, and on the 24th of January, 1922, the date of the adjourned hearing on the alleged protest, that they could only be heard as to the proportionate amounts to be assessed against the property of each as theretofore approved by the city commissioners, and the manner of making the improvements, and that they advised the commissioners that they had no desire to be heard upon this question. The trial court expressly found that the contract had been substantially complied with and the proportion of benefits to the property of each property owner in the district was fair and equitable. And since no one offered objection, a hearing on which is authorized by section 7, there was nothing before the commissioners to be heard, and this section being the only section providing for a hearing on the question of benefits or otherwise, the judgment of the trial court as set forth in subdivision one, supra, is erroneous.

This construction of section 7, supra, based by us on the fair import of the language construed with the other sections, is further sustained as the correct one by that part of the record in the instant case which discloses that each city administration and city attorney, from the adoption of the charter in 1909, has so construed it, and operated on that construction.

In the case State ex rel. Reardon v. Hooker, 26 Okla. 460, 109 Pac. 527, this court,

speaking through Justice Williams, said, in effect, that if the construction sought to be placed upon a law produces an absurd and unreasonable result, it then becomes necessary by utilizing the recognized rules of construction to determine the meaning, and "it is one of the rules of construction that where the meaning of a statute is doubtful, long usage is a just medium by which to expound it." League v. Taloga, 36 Okla. 535, 129 Pac. 702: Hasque v. Ry. Co., 68 Okla. 183, 173 Pac. 73; Hunter v. State, 49 Okla. 672, 154 Pac. 545 (and cases therein cited).

### Division No. 2 of Judgment.

At the basis of the inquiry as to whether or not division 2, supra, of the judgment can be sustained and justified, lies the provisions of the city charter as to what the officers, or city commissioners, can contract to give in payment for the improvements. It is not contended that the contract in the instant case provided for payment of anything other than that provided for in the charter. The provision of the contract which covers this is as follows:

"The entire cost of said improvements on said portions of said streets and avenues and each of them, shall be apportioned to and levied and assessed against the abutting property liable to assessment therefor, and the owners thereof, in accordance with the provisions of article 9 of the charter of the city of Tulsa, Okla., and payments to the contractor will be made in tax bills evidencing said assessment."

To repeat, the engineer has to do only with making of the specifications, submitting them to the commissioners for their approval, making the surveys, supervising the work of construction to the end that it may be carried out as by the specifications and the contract required; when so completed, to approve or disapprove the same, and report the situation to the city commissioners; and while said sections 7 in language provides that he shall make out an estimate, this is an inapt designation of what he is clearly required to do. What he makes out is in reality a compilation, rather than an estimate, which compilation is based upon the contract price already entered into before he is called upon to make out the same, so-called estimate. An "estimate," as defined by lexicographers, and as found in 16 Cyc. 669, is: "A valuing or rating by the mind, without actually measuring, weighing or the like; rough or approximate calculation and approximate judgment or opinion as to weight, magnitude, cost or the like."

It is clear from the provisions of the

charter quoted above, that the engineer makes his calculations or compilation, based upon the agreed price in the contract already approved by the city commissioners, on the cost of the whole work, and it is a mere mathematical calculation, showing the lots in the district, by whom owned, the number of front feet of each, and the proportion of the whole cost which each lot shall bear, and which is to be fixed by the assessing ordinance as a lien on the property of each proprietor, to secure and guarantee the payment of the tax bill issued to the contractor in compensation for his work, and thereafter submit the same to the commissioners for their approval. Whereupon the same is published, and a copy mailed to each proprietor in the district. As to this compilation, or estimate, the trial court found as a fact (finding No. 23):

"That the measurements and computation of the quantities and the application thereto of the prices fixed in the contract, in determining the total cost of said improvements, are substantially correct."

The contract having been made by the city through its proper officers, after a full and complete performance of each anterior requirement of the charter, what did the engineer have to do with the letting of the contract? The court expressly found that the charter required no preliminary estimate, and nothing designated as such was required to be made, until this compilation referred to in section 7, and which is published, and mailed to the property owners, which the trial court found was not required to be done until after the completion of the work, but before the assessing ordinance is passed. Therefore, the engineer had nothing to do with any step in the proceeding, until after the execution of the contract, except to prepare the plans and specifications.

We are therefore driven to the conclusion that the matter referred to in findings Nos. 19 and 22 as an estimate is nothing other than the compilation made by the engineer under section 7. These findings are to the effect that the engineer included as part of the cost 15 per cent., the market discount on the tax bills, and the commissioners (finding No. 22) approved the aggregate cost with this item included, and the question is, Can this vitiate the contract made in strict compliance with the charter, and justify subdivision 2 of the judgment?

The contract is either valid as written, or it is invalid. The unbroken rule of law settled by this court in numerous cases, supported by reason and authority, is expressed in the case of Weaver v. City of Chickasha, 36 Okla. 226, 128 Pac. 305, to the effect that

where all the resolutions and proceedings required by law have been regular, and bids have been received, and the contract let in compliance with the notice given as required, such action of the city officers is final as to the contract price of the work, in the absence of fraud, collusion, or mistake.

Plaintiffs' amended petition can be interpreted in no other light as to this element than that they sought to avoid the contract on the ground of fraud and collusion. But the trial court found that there was no fraud or collusion. Adverting to the charter provisions, supra, we see that bids must be submitted, and the contract made, not on the basis of receipt by the contractor of cash, but tax bills secured by a lien on the respective lots in the district. If tax bills were worth 15 per cent. less than par, and the law required the bidder to contract to receive same in payment for the work, this, with innumerable other items and conditions, must be taken into consideration by the contractor, lest bankruptcy be his reward for his services rendered. Suppose the contractor had the market value of the tax bills in mind. The officers still had the power to reject his bid and refuse to enter into the contract. The high cost of all character of materials, labor, etc, and the value of securities such as here in 1921, must have been novel neither to the officers, the contractor, nor the property owners. Such conditions went to the feasibility of making improvements at that time. There is not a line in the voluminous record that any lot owner offered to pay cash, the market value of tax bills to be issued against his property, which they plead, and which the evidence tends to show was about 15 per cent. below par. Certainly the contractors must market and receive the market price of such securities. But plaintiffs' brief shows the purpose of the suit was to annul the contract in its entirety, take the improvements without any compensation— improvements which they had sought and insisted be made. Even their argument in this court extends to the declaration that no assessment can now be made for any amount. Such argument is repulsive to the principles of law which they seek to invoke.

In view of the finding of the regularity of the proceedings anterior to the contract, and that the contract followed the charter requirements, we are at a loss to know on what theory the trial court invaded the contract, as shown by division 2 of the judgment. Even if the contractors and officers took the 15 per cent. item into consideration, the conclusion is on no other than

the erroneous hypothesis discussed by Justice Kane in the case of Reed v. Bartlesville, No. 13458, decided March 13, 1923, Appellate Court Reporter March 15, 1923, page 83 (but withdrawn, pending the decision of the appeal in the case which was the basis of the action). In this case the learned Justice considered a sewer contract and the assessment of the amount of the cost thereof against the benefited property, which included 25 per cent., the market discount of the sewer script. It was there contended that the engineer, acting under the state law, which required a preliminary estimate, added 25 per cent. for discount to his estimate. The Justice in effect said the contractors were at liberty to submit any bid, but the state law limited acceptance to one within the estimate. Justice Kane further said that counsel in that case seemed to erroneously assume that the law requires that the estimate of cost shall be based upon the actual or cash cost of the work; and further said that the officers must take into consideration a reasonable margin of profit for the successful bidder, and if the conduct and action of the officers and the contractor in entering into the contract was free from fraud, the inclusion of the alleged amount of the market discount on the script would not furnish any ground for failure to pay the contractor the full amount of the contract price. The reasoning of the learned Justice, who served this court so long and so ably, but who, as we now trust, enjoys a reward more just and considerate for services well rendered than men are inclined to accord, condemns the idea on which the conclusion of the trial court was apparently reached.

Neither the state law nor the charter of Tulsa requires that the bids shall be on a cost basis or on a cash basis. Neither law requires that tax bills, such as here, shall be considered by the contractor at their par or face value in making his bid, nor received at par by the contractor, whether they be worth 15 per cent. or more, less than par. Can one contracting to receive a security for that with which he parts, not consider the worth of what he receives or is to receive in compensation for material, work, and labor, without rendering his contract unenforceable, in the absence of law requiring that he receive such security at par? There is no law in this state prescribing par as the market of security, except direct obligations of municipalities voted by the people. It might have been better had the charter provided that bids should be submitted for so much cash, or so much in tax bills, and the contract made accordingly. But it does not—though the

people have power to so amend it. As it then stood, and now is, bids are submitted and the contract made in terms of value— not of cash, but of tax bills, and in the absence of fraud, plaintiffs' allegations cannot prevent the contractor receiving what his contract calls for.

In the case of Kerker v. Bocher, 20 Okla. 729, 95 Pac. 981, this court affirmed the judgment of the trial court refusing to invalidate a contract for public improvements, which had incorporated in it that the contractor would give a discount of 40 per cent. to any property owner who would pay cash before the securities were issued, which he must otherwise receive. To the same effect in reasoning is the recent case of Bainbridge v. Jester (Ga.) 121 S. E. 798 (Advance Sheet April 19, 1924).

We are therefore driven to the conclusion, from the findings of the trial court, that the contract entered into by the commissioners was a valid, binding, and enforceable obligation, as against the paving district and the property therein, and that the conclusions of the trial court in subdivision 2 of its judgment were erroneous.

#### Division No. 3 of the Judgment.

The third and last division of the judgment, supra, involves the question, Did the commissioners have authority to levy in the assessment engineering fees of 5 per cent. and the printing cost?

The charter authorizes the assessment of all expenses incident to the improvements against the property. Ordinance No. 2083 provided that 5 per cent. should be added to the total other cost of public improvements as here, for engineering fees, the same to be paid by the contractor before tax bills are delivered in payment for the work. If such ordinance need permissive sanction in the charter, we find it in section 13 as amended. The trial court found as a fact that this was a fair, just, and reasonable amount for the necessary work of the engineer, incident to the improvements, and that such an amount had for a long period of time been assessed and collected against property in special tax cases in the city of Tulsa (finding No. 26). This ordinance is nothing more than a legislative determination of the reasonable amount to be charged for such services, and it must be held, in the absence of a definite showing to the contrary, that it was the necessary sum to reimburse the city for the cost of the engineer's services paid out. The allegations of plaintiffs is that this 5 per cent. amounted in this particular paving district in question to $900, and the actual cost of the printing amounted to $175.

This matter of assessing such cost for the purpose of reimbursing municipalities is not novel in Oklahoma. Under the state paving law (sections 469 and 626, Rev. Laws 1910) authority is granted cities operating under the state law to levy any amount necessary to reimburse the city on account of any and all expenses incident to the improvement incurred by it.

The city of Tulsa, operating under its charter, is a miniature sovereign; its commissioners, its legislative body; and no reason exists why this body cannot by ordinance provide for reimbursement to the city of such expenses. If an engineer had not already been in the employ of the city, and one had been engaged outside, could any one successfully say that the court's finding 5 per cent. reasonable and just was erroneous? Then why, in the absence of a showing that such amount was unnecessary to reimburse the city for his services in this district, or was unreasonably excessive, can the city not under authority of the ordinance reimburse itself to such an amount? No contention is made here, and we perceive that none can be successfully made, that the engineer's services were not as necessary to the proper making of the improvements as any other labor. It cannot be furnished free unless the city is compelled to furnish it free. In 28 Cyc. page 1153, we find.

"All expenses necessarily incident to the making of improvements may be included in the assessment; that is, the cost of service, and of preliminary proceedings, the expenses of levying the assessment, etc., are proper items to be included." Shryock v. Hannehan et al. (Wash.) 112 Pac. 377.

In the case of Bailey v. Henrion et al. (Kan.) 194 Pac. 928, that court said:

"Another question is raised by the plaintiffs.. Included in the cost of this paving improvement was an item of 5 per cent. for engineering expenses. Aside from the physical work of excavation, construction, and the furnishing of materials, there is a necessary expense of surveying, making blueprints, supervising the work as it progresses, and inspecting the materials used in making the pavement. Is this a proper charge in calculating the true cost of the improvement? This expense is called 'engineering;' sometimes it is called 'overhead.' Whatever the name, it is a necessary item of expenditure. It would be a very costly economy, indeed it would be absurd, to undertake an expensive work of paving construc-

tion without this 'engineering.' While the city may have an official engineer and pay him an annual salary, yet he cannot do all this work alone. He must have linemen, rodmen, and perhaps other employes at the particular work, or in his office, assisting him; and it must be held that a reasonable charge for this 'overhead' or 'engineering' is properly included in determining the cost of the improvement, and it is proper to take it into account in assessing that cost against the property benefited by the improvement."

To the same effect are Burns v. City (Minn.) 104 N. W. 704; Mayor of Atkinson v. Price (Kan.) 25 Pac. 605; Parsons v. City of Worcester (Mass.) 125 N. E. 205; In re Johnson (N. Y.) 8 N. E. 399; Cummings v. Grand Rapids (Mich.) 9 N. W. 141.

The cost to the amount of $175 of the printing incident, necessary, and required by the charter to the public improvements herein involved, on similar reasoning, is a proper and legitimate charge.

Viewing the case as a whole, we fail to find any failure on the part of the city commissioners to comply with the provisions of the charter of the city of Tulsa, as embraced in chapter 9 governing the making of such public improvements, when the sections are properly interpreted and read together. The people of said municipality adopted said charter, and have never surrendered the power to amend or change the same. If alleged rights not thereby secured are deemed needed by the citizenship in safeguarding the making of improvements as in the instant case, the people, under its own provisions, have power to insert therein the same. The provisions of article 9 violate no rights protected by the Constitution of the United States, or of this state, and no fraud or collusion being found to exist in the conduct of the proceedings incident to the execution of the contract in question here, the same must be held a valid and binding obligation, and the compensation agreed therein to be given in the form of tax bills to the contractor cannot be lessened or impaired. The judgment of the trial court in each of its divisions, as hereinabove set out, must be reversed, with directions to enter judgment in favor of the defendants, dismissing plaintiffs' petition for want of equity. and the opinion of this court reported in 216 Pac. page 98, is withdrawn.

JOHNSON, C. J., and LYDICK, WARREN, and GORDON, JJ., concur.