Norman B. Parsons *vs.* City of Worcester.
Same *vs.* Same.

Worcester. September 29, 1919. — November 25, 1919.

Present: Rugg, C. J., De Courcy, Crosby, Carroll, & Jenney, JJ.

*Sewer,* Assessment for construction. *Worcester.*

The mayor and aldermen of the city of Worcester, in computing the expenditure of the city for the construction of a sewer with a view to assessing a proportionate part thereof under St. 1867, c. 106, § 4, upon the owners of land abutting upon or benefited by the sewer, have a right to include a fair price for the use in the work of constructing the sewer of an excavating machine of the water department of the city.

In such computation there also properly may be included a proportional part of the salary of the superintendent of sewers and engineering and clerical services necessary for the performance of the work of constructing the sewer.

Further items proper to include as a part of the cost of the construction of the sewer in such computation are "other ordinary and usual overhead expenses of the sewer department" so far as they embrace only necessary expenses actually connected with the particular sewer in question and such as unquestionably would be proper elements of the cost of construction if employed and provided for that work alone.

The fact that, in constructing a single system of drainage and sewage in a certain street under St. 1867, c. 106, the authorities of the city of Worcester built two conduits, one of which was for carrying off underground and surface water and the other for carrying off house sewage, does not invalidate an assessment of a proportionate share of the expenditure incurred by the city in the construction of the system which included both conduits upon an owner of land which abutted on the street, to whom the conduit for carrying off

underground and surface water was of no value and whose land was not increased in value by its construction or existence, where it appears that the benefit to such land "by the construction of said sewer, equals or exceeds" the amount of the assessment, and that the premises could "be connected with said sewer."

The fact, that an auditor, to whom was referred, under an agreement that his findings of fact should be final, a petition under St. 1867, c. 106, § 4, for the revision of the assessment above described, found that "the city of Worcester is required by law to purify its sewage before turning the same into the Blackstone River [intending to refer to St. 1886, c. 331,] and . . . said dual system of sewers was adopted as a measure reasonably necessary to so purify the sewage," does not show as a matter of law that the assessment was invalid, since it did not appear that any attempt was made to levy an assessment under St. 1886, c. 331, and it could not be assumed upon the record that any elements of expenditure incurred in carrying out the requirements of St. 1886, c. 331, had been included in the assessments in question.

Two PETITIONS, filed in the Superior Court on August 3, 1915, for revision by a jury under St. 1867, c. 106, § 4, of assessments made by the mayor and the board of aldermen of Worcester for sewers laid under the provisions of that statute in Armandale Street and in Apricot Street, respectively, the assessment upon the petitioner for the sewer in Armandale Street being $462.72, and assessments for the Apricot Street sewer amounting to $379.94.

In the Superior Court the petitions were referred to an auditor under an agreement that his findings of fact should be final.

As to the Armandale Street assessment, the auditor made the following, among other findings:

"I find that there was included in the cost a proportionate part of the salary of the superintendent of sewers, clerical services, and other ordinary and usual overhead expenses of the sewer department.

"I find that in laying this sewer, the sewer department of the city of Worcester hired from the water department of the city of Worcester an excavating machine, for which said use the sewer department has allowed the water department a fair and reasonable compensation, which amount was charged as a part of the expense of said sewer in Armandale Street, but no more was charged therefor than a fair price for the use of said excavating machine for doing the work in Armandale Street.

"I find that the apportionment of the assessment on Armandale Street was equitable, proportional, and legal, unless the facts stated herein shall invalidate the same.

"I find that the benefit to the petitioner's land, as described in

said petition, by the construction of said sewer, equals or exceeds the amount of said assessment, and that said premises can be connected with said sewer."

· As to the Apricot Street assessments, the auditor made the same findings as those stated in the first two of the paragraphs above quoted from his findings as to the Armandale Street assessment, and also the following, among other findings:

"I find that a sewer was laid in said Apricot Street abutting on the premises described in said petition, in pursuance to an order duly and lawfully passed and adopted by the city of Worcester.

"I find that the sewage system of the city is now based upon a plan of placing in each street where a sewer is authorized to be laid, two conduits, one for the house disposal sewage and the other for the drainage of underground and surface water, unless such underground and surface drainage can be disposed of by natural drainage, such plan having been adopted by the city at a time prior to the construction of said sewer, and I find that these two conduits constitute, together, one system of drainage and sewage disposal.

"I find that the cost of both these conduits was included by the city of Worcester in the cost of laying the sewer, as ordered, in said Apricot Street. . . .

"I find that the apportionment of the said assessments on Apricot Street were equitable, proportional, and legal, unless the facts herein stated shall invalidate the same.

"I find that the city of Worcester is required by law to purify its sewage before turning the same into the Blackstone River, and that said dual system of sewers was adopted as a measure reasonably necessary to so purify the sewage.·

"I find, however, that the conduit for the underground and surface water, so far as it abuts upon the land of the petitioner described in said petition, is of no value to the petitioner and does not increase the value of his estate, for the reason that the land described in said petition slopes toward a brook within a short distance of said Apricot Street, and that the most reasonable way of securing surface and underground drainage necessary from said premises is to said brook.

"I find that the benefit to the petitioner's land, as described in said petition, by the construction of said sewer, equals or exceeds

the amounts of said assessments, and that said premises can be connected with said sewer."

The cases were heard upon the auditor's reports by *O'Connell, J.*, without a jury. The petitioner asked for the following rulings in both cases the rulings being numbered two and three in the case relating to the Apricot Street sewer and being unnumbered in the case relating to the Armandale Street sewer.

"That no portion of the general expenses of the city of Worcester for its water, sewer or engineering departments, whether for the salary of the superintendent of sewers, administration expenses, shop maintenance or otherwise, can be included in the cost of laying and constructing sewer for which the petitioner can be assessed on account of the expenditure of the city for sewers and drains under the provisions of law.

"That as items of alleged expense of laying and constructing sewer were improperly included and the actual, proper and legal expense of said sewer cannot be stated, the whole assessment must fall."

As to the Apricot Street assessments, the petitioner also asked for the following rulings: '

"1. That the cost of laying and constructing sewer for drainage of surface water cannot be included in the cost of sewer through Apricot Street for which this petitioner can be assessed, on account of the expenditure of the city for drains and sewers under the provisions of existing law."

"4. That the assessment[s] on Apricot Street is [are] invalid as containing charges for construction of a surface sewer which the auditor has found was not needed to drain the petitioner's land of underground or surface water."

The judge found that the assessments as made should stand; and the petitioner alleged exceptions.

Material portions of St. 1867, c. 106, are as follows:

"Section 1. The city council of the city of Worcester may lay, make and maintain in said city all such drains and common sewers as they shall adjudge to be for the public health or convenience, and may repair the same, from time to time, whenever necessary; and the said city and the citizens thereof, shall have the same rights, and be subject to the same liabilities, as if the same had been laid, made or maintained under the provisions of chapter forty-eight of the General Statutes, except as hereinafter provided."

"Section 4. Every person owning real estate upon any street in which any drain or sewer may be laid under or by virtue of this act, and upon the line thereof, or whose real estate may be benefited thereby, shall pay to said city such sum as the mayor and aldermen shall assess upon him as his proportionate share of the expenditure of the city for drains and sewers; and the sum so assessed upon him shall constitute a lien upon said real estate for two years after it is assessed; and if not paid within ninety days after notice of said assessment served upon the owner of said land, or his agent, may be levied by a sale of said real estate to be conducted in the same manner as a sale of real estate for the nonpayment of taxes. And any person aggrieved by the doings of the mayor and aldermen under this section, may at any time within three months from receiving notice of any assessment, apply for a jury in the manner provided in the sixth section of the forty-eighth chapter of the General Statutes."

The cases were submitted on briefs.

*H. L. Parker,* for the petitioner.

*J. W. Mawbey & F. L. Riley,* for the respondent.

DE COURCY, J. These petitions were brought under St. 1867, c. 106, § 4; one to revise an assessment for a sewer laid in Armandale Street, and the other to revise two assessments for a sewer laid in Apricot Street. The cases were referred to an auditor under an agreement that his findings of fact should be final. Among the findings was one that there was included in the assessments "a proportionate part of the salary of the superintendent of sewers, clerical services, and other ordinary and usual overhead expenses of the sewer department." He also found that in laying out the sewers the sewer department "hired" an excavating machine from the water department of the city, and allowed the water department a fair and reasonable compensation for its use. By appropriate requests for rulings the question was raised whether such expenses could legally be included in the cost on which the petitioner was assessed.

The city of Worcester is not subject to the general laws relating to sewers. It lays, maintains and assesses for them under a special act, St. 1867, c. 106. Section 4 of that statute provides, "Every person owning real estate upon any street in which any drain or sewer may be laid under or by virtue of this act, and

upon the line thereof, or whose real estate may be benefited thereby, shall pay to said city such sum as the mayor and aldermen shall assess upon him as his proportionate share of the expenditure of the city for drains and sewers." It was said by this court in *Clark* v. *Worcester*, 125 Mass. 226, 232, ". . . the assessment under § 4 is an assessment, upon the several classes of estates, of a proportionate share of the expenditure of the city for drains and sewers, and not an assessment for the particular benefit derived by any estate from any particular sewer. It is not based upon the peculiar and special benefits of each estate." And see *Butler* v. *Worcester*, 112 Mass. 541; *Workman* v. *Worcester*, 118 Mass. 168. In *Smith* v. *Mayor & Aldermen of Worcester*, 182 Mass. 232, where the statute was given a more restricted interpretation, it was said (page 234): ". . . when the Legislature has contemplated a certain region and may be supposed to have acted in view of a specific scheme, there is no doubt that within reasonable limits it may determine that the cost of an improvement shall fall upon a designated district and may fix the principles upon which the cost shall be apportioned. [Citing cases.] It may deal with the whole improvement as a unit and charge those assessed with a share of the total expense" and (page 235) "When the Legislature has determined that the cost or a portion of it shall be thrown upon a designated region, the determination must be assumed to have been reached on constitutional principles, unless the court can see that it was unreasonable. On that assumption the right of individual owners within the designated region is narrowed. When they go before a jury they may contest the apportionment, but they cannot show that they have received no benefit at all. That the Legislature has decided." To what extent the petitioner under this particular statute can inquire into the amount his land was benefited need not now be determined. We assume that he has a right to question the items of "expenditure of the city for drains and sewers." It is plain, however, that the use of an excavating machine is a proper item of expense, and the fact that it was "hired" from another department of the city is immaterial, in view of the finding that no more than a fair price was charged for its use in the work on these sewers. In principle this is within the decision of *Corcoran* v. *Aldermen of Cambridge*, 199 Mass. 5, where the validity of an assessment of the expenses of watering

streets was in issue. It was there held that the value of the water furnished by the city from its aqueduct, maintained at its expense, might be included as a part of the cost.

Undoubtedly the mayor and aldermen could include as proper items of the cost of construction such incidental expenses as engineering and clerk hire, necessary for the performance of the work. In our opinion there is no reason in principle for excluding these items merely because the city employed the men to attend to this and other similar work. In view of the finding for the defendant, we assume that the "other ordinary and usual overhead expenses of the sewer department" included in the cost, embrace only necessary expenses actually connected with these particular sewers, and such as unquestionably would be proper elements of the cost of construction if employed and provided for this work alone. Where the actual time devoted by these employees to the work in question is determined, the proportion which the time so spent bears to the whole time for which these employees are paid can be easily computed. The weight of authority seems to be in favor of this view. *In re Petition of Lowden,* 89 N. Y. 548. *Gibson* v. *Chicago,* 22 Ill. 566. *Burns* v. *Duluth,* 96 Minn. 104. *Stow* v. *Common Council of Kingston,* 39 App. Div. (N. Y.) 80. *Contra,* see *Longworth* v. *Cincinnati,* 34 Ohio St. 101; and see *Smith* v. *Portland,* 25 Ore. 297.

˙Accordingly we are of opinion that there was no error in the refusal of the court to give the ruling requested in the case of the Armandale Street sewer, and none in the refusal to give the second and third rulings requested in the case relating to the Apricot Street sewers.

In the petition to revise the assessments for the sewers laid in Apricot Street, there exists another question, raised by the petitioner's first and fourth requests for rulings. The land of the petitioner admittedly is within the taxing district of these sewers. Two conduits were laid, one for house sewage and the other for drainage of underground and surface water. Even assuming it to be material that the petitioner does not now need the surface water conduit for the drainage of his land, the auditor has found that the benefit to the land by the construction of said sewer "equals or exceeds the amounts of said assessments, and that said premises can be connected with said sewer." The fact that

the city authorities saw fit to construct separate conduits to carry house sewage and surface water rather than to use one large conduit for both, plainly does not invalidate the assessments. The city had adopted this general plan for its sewage system at a time prior to the construction of the Apricot Street sewer; and the auditor expressly finds that "these two conduits constitute, together, one system of drainage and sewage disposal."

The petitioner now questions the validity of this assessment because of the auditor's finding, "that the city of Worcester is required by law to purify its sewage before turning the same into the Blackstone River, and that said dual system of sewers was adopted as a measure reasonably necessary to so purify the sewage." Presumably the auditor referred to St. 1886, c. 331, although it is not mentioned. That statute authorized and required the city of Worcester to purify the sewage discharged into Blackstone River through Mill Brook, under the authority of St. 1867. As interpreted in *Harrington* v. *Worcester*, 186 Mass. 594, St. 1886 was "a measure in the interest of the general public, looking particularly to the protection of the health of the people living near the Blackstone River;" and in carrying out this public duty the city of Worcester acts in part at least, as an agency of the government. See also *Rome* v. *Worcester*, 188 Mass. 307. Whether the city has power to levy an assessment for expenditures incurred in carrying out this statute need not be considered. As we construe the record in these cases no attempt was made to levy assessments under the 1886 statute. Those here in question were levied under St. 1867, c. 106; the petitions are expressly brought under § 4 of that act; and the brief of the petitioner begins with the statement that the petitions were brought to revise assessments laid "under the aforesaid act" of 1867. Nor can we assume that the city authorities included in these assessments any elements of expenditure that in fact were incurred in carrying out the requirements of the 1886 statute. As already stated, the two conduits constituted a single system of drainage and sewage disposal, and the work done in Apricot Street was in accordance with the general plan adopted by the city for the construction of its sewers.

No error is disclosed in the refusal of the trial judge to

rule as requested by the petitioner. In each case the entry must be

*Exceptions overruled.*