No. 22,914.

CELESTIA A. BAILEY and W. B. BAILEY, *Appellants*, v. W. S. HENRION et al., *Appellees*.

### SYLLABUS BY THE COURT.

1. CITIES—*Authority to Pave Portion of Certain Streets Regardless of Protests.* Under the statute (Gen. Stat. 1915, § 1236) a city of the first class has power, upon its own initiative and regardless of the attitude of resident taxpayers affected thereby, to pave an intervening portion of a city street to connect portions already paved, if such unpaved portion does not exceed two ordinary city blocks in extent.

2. PAVING STREETS—*Engineering Expenses a Legitimate Charge.* A reasonable charge for engineering expenses, which includes surveying, drafting blueprints, supervising the work and inspecting materials used in making a street pavement, constitutes a proper item to be included in computing and assessing the cost of the improvement.

3. RESOLUTIONS REQUIRING PUBLICATION—*Should Be Published in Newspaper of General Circulation.* Where a resolution adopted by a city government is required to be published, it should be published in a newspaper of general circulation, and its publication in an obscure sheet of 155 subscribers, in a city of over 70,000 inhabitants, is not a compliance in good faith with such requirement.

4. PAVING STREETS—*Assessments—Levy of Taxes—No Grounds for Injunction.* Objections to the assessment and levy of taxes to pay for the construction of a street pavement considered, and no ground justifying interference by a court of equity discerned.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed January 8, 1921. Affirmed.

*W. B. Bailey,* of Wichita, for the appellants.

*Robert C. Foulston, James A. Conly, George Siefkin,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs brought this action to enjoin the city of Wichita and certain public officials of Sedgwick county from levying a special tax on certain town lots of plaintiffs' to pay for paving two blocks of a city street. Plaintiffs also prayed for other equitable relief.

The paving in question was upon two blocks of Lorraine avenue in the city of Wichita, a street extending north and

south and crossed by Central avenue and by Third street, which are parallel to each other, running east and west, and which are not over two blocks apart. At the crossing of Central and Lorraine, and northward therefrom, the latter street is paved. At the crossing of Third street and Lorraine, and thereabout, Lorraine has been improved in a fashion which answers the purpose of both a paved roadway and a paved storm-water sewer. This unusual improvement is constructed like a pavement, forty feet wide, with side walls, but depressed or concave in the center instead of being crowned or convex in the usual manner of a pavement. Part of the city engineer's testimony reads:

"Q. You say pavement; you mean the construction of the sewer? A. The physical construction of the sewer, which included the pavement on Third street, yes, sir. . . .

"Q. This Third street [at intersection with Lorraine] that has been spoken of acts as a storm-water sewer at times? A. Yes, sir.

"Q. Is it also a pavement? A. Yes, sir.

"Q. And it is constructed as a pavement so far as the intersection of Lorraine and Third Street is concerned? A. Yes, sir; so far as traffic is concerned, it serves the purpose of a pavement."

The paving of Lorraine avenue between Third and Central, not exceeding two blocks and in fact some twenty-five feet less than that distance, was undertaken by the city authorities pursuant to section 1236 of the General Statutes of 1915, viz.:

"And in all cases when two or more portions of any street or alley have been graded, guttered, curbed, paved, or macadamized, and intervening portions of said street or alley have not been graded, guttered, curbed, paved, or macadamized, the mayor and council may by resolution cause the intervening portion to be graded, guttered, curbed, paved or macadamized not to exceed two blocks, and levy special assessments to pay for the same, regardless of any protests of the property owners affected thereby."

The trial court refused an injunction, and plaintiffs appeal.

Since the evidence showed and the trial court found the fact to be that the improvement at the intersection of Third and Lorraine streets was in fact a street paving (as well as a storm-water sewer) and Lorraine avenue at its intersection with Central avenue was likewise paved, and the distance intervening did not exceed two blocks, the statute gave express authority to pave the street in question, and any irregularities in a petition of taxpayers praying that the improvement should

be made were immaterial. Such a petition was only a suggestion, which the city officials might informally grant or ignore at their discretion. Cities of the second class have a similar grant of statutory power (Gen. Stat. 1915, § 897), and it has been held immaterial what attitude the resident taxpayers assume toward such projected improvement. (*Fairchild v. City of Holton*, 101 Kan. 330, 166 Pac. 503.) It must therefore be held that the city of Wichita had power, on its own initiative, to order the construction of the paving, by a mere resolution to that effect.

Another question is raised by the plaintiffs. Included in the cost of this paving improvement was an item of 5 per cent for engineering expenses. Aside from the physical work of excavation, construction, and the furnishing of materials, there is a necessary expense of surveying, making blueprints, supervising the work as it progresses, and inspecting the materials used in making the pavement. Is this a proper charge in calculating the true cost of the improvement? This expense is called "engineering"; sometimes it is called "overhead." Whatever the name, it is a necessary item of expenditure. It would be a very costly economy, indeed it would be absurd, to undertake an expensive work of paving construction without this "engineering." While the city may have an official engineer and pay him an annual salary, yet he cannot do all this work alone. He must have linemen, rodmen, and perhaps other employees, at the particular work or in his office, assisting him; and it must be held that a reasonable charge for this "overhead," or "engineering," is properly included in determining the cost of the improvement, and it is proper to take it into account in assessing that cost against the property benefited by the improvement. In 28 Cyc. 1153, it is said:

"All expenses necessarily incident to the making of improvements may be included in the assessment; thus, the cost of surveys, and of preliminary proceedings, the expense of levying the assessment, . . . are proper items to be included."

One of the minor matters pressed by the plaintiffs relates to the publication of the paving resolution in an insignificant sheet in Wichita, named the "Daily Record," a publication which could not fairly be called a newspaper. It was a trifling affair, having no editor, a circulation of 155 subscribers, in a

city of 72,217 inhabitants. (U. S. Census, 1920.) If the resolution needed to be published at all (28 Cyc. 359, 360) it should have been published in a newspaper of general circulation, and there is no lack of such in Wichita. However, this matter was not called to the court's attention until after judgment, and if the plaintiffs had exercised any diligence they could have established the fact at the trial.

. The other points urged by plaintiffs have been carefully considered but they are without merit and require no discussion.

The judgment is affirmed.