No. 27,377.

FRANK GRECIAN, *Appellant and Cross Appellee*, v. THE CITY OF HILL CITY, GRAHAM COUNTY, JOHN W. GORDON, GEORGE B. MUNSON, LOREN J. WOLFE, PERRY WISEMAN, E. L. HALL, A. J. WILSON, I. R. MORT and C. E. KELLOGG, *Appellees*, and THE FIDELITY NATIONAL BANK AND TRUST COMPANY OF KANSAS CITY, MISSOURI, *Cross Appellant*.

### SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS — *Proper Paving Expense — Improving Water Mains*. The cost of improving water mains in a municipally owned water plant by taking out iron piping and putting in lead pipes and connections is not a proper item of expense to be included in the cost of paving, curbing and guttering the street.

2. SAME—*Regularity of Proceedings—Who May Question*. The state, at the instance of the attorney-general or the county attorney, is the supervisor of the regularity of the proceedings of municipal officers. An individual taxpayer of the municipality cannot question the regularity of such proceedings unless the alleged irregularity results in his financial injury—as to increase his taxes.

3. SAME—*Construction Bonds—Interest on Temporary Notes*. A contract between a city and a trust company for the sale of improvement bonds, in which the trust company agreed to carry the temporary notes of the city at a named rate of interest, is construed and held that the temporary notes should bear the named rate of interest until the bonds were issued and sold.

Appeal from Graham district court; CHARLES I. SPARKS, judge. Opinion filed May 7, 1927. Modified.

*Charles L. Hunt, Frank C. Baldwin* and *C. J. Putt,* all of Concordia, for the appellant.

*W. L. Sayers,* of Hill City, *J. D. Bowersock, Robert B. Fizzell* and *John F. Rhodes,* all of Kansas City, Mo., for the appellees and cross appellant.

Municipal Corporations, 28 Cyc. pp. 1153 n. 42, 1167 n. 61, 1596 n. 33, 1745 n. 44.

The opinion of the court was delivered by

HARVEY, J.: This is an action by a property owner and taxpayer of the city of Hill City, owning property abutting one of the paving projects in question, to enjoin the city and its officials from issuing further temporary notes for paving improvements, and from paying those previously issued, and from issuing bonds to redeem such temporary notes and to pay the cost of such paving improvements, and to enjoin the levying of special assessments against the property of plaintiff and others similarly situated, and praying that the assessment made be set aside, and for a mandatory order that defendants restore funds of the city to their proper funds, and to enjoin the carrying out of the terms of a certain contract for the sale of bonds for paving improvements. The bank which had contracted to purchase the bonds intervened. The case was tried to the court, judgment was rendered denying plaintiff the relief sought, except as to an item of interest on the temporary notes. Plaintiff has appealed from the adverse judgment, and the intervening bank has appealed from the judgment respecting interest on the temporary notes.

The controversy grows out of street paving initiated in Hill City in 1925, and later completed. The improvements are spoken of by the parties as five separate projects. No question is raised in this court as to the legality of the proceedings in any of the projects prior to the passage of the respective ordinances authorizing the improvements, hence we need not state those proceedings. It is not possible, with the brevity necessary in an opinion, to state all the details shown by the abstract concerning each of these projects. Perhaps the following will be sufficient. As to project No. 1: The ordinance authorizing the improvement was passed August 3, 1925, and on that date the engineers' preliminary statement was filed; notice to bidders was published August 6; on August 11 the contract was executed for the work. As to project No. 2: The ordinance authorizing the improvement was passed August 11, 1925; on August 15 the contract was executed for this work. As to project No. 3: The ordinance authorizing the improvement was passed December 2, 1925; on December 4 the contract was executed for this work. As to project No. 4: The ordinance authorizing the improvements was passed December 2, 1925; on December 4 the contract was executed for this work. As to project No. 5: The ordinance authorizing the improvement was passed December 21, 1925; on December 26 the

contract was executed for this work. On February 19, 1926, appraisers were appointed to value and appraise the lots, pieces, tracts and parcels of ground subject to special assessment and taxation for the improvements for all of the five projects above mentioned. On March 8 the appraisers made their report, and a resolution was passed providing for a special session of the mayor and councilmen on March 18, for the purpose of hearing complaints of persons interested in the appraisement and valuation fixed by the appraisers. Notice of this meeting was given in the official city paper. The meeting was held, but no one appeared to complain, and the assessment and appraisement, as made by the appraisers, was approved and adopted. The assessment ordinance was passed and published April 5, 1926.

On August 11, 1925, the Fidelity National Bank and Trust Company of Kansas City, Mo., made a written .proposal, which was accepted, to the mayor and council, "For $100,000, more or less legally issued internal improvement bonds of your city delivered to us. . . . said bonds to be of denomination of $1,000, bearing interest at the rate of 4¾ per cent. . . . We will pay par and accrued interest to date of delivery. . . . We agree to carry your temporary notes at 4¾ per cent. This bid is to cover all bonds issued in connection with paving contracts awarded in 1925 . . ." On August 13 the city clerk had published in the official paper a notice that "On and after the 13th day of August, 1925, the city of Hill City, Kansas, will have for sale approximately $100,000 worth of internal improvement bonds. The city desires the best rate of interest that will bring par and accrued interest for the bonds. Purchasers of these bonds will be expected to do necessary temporary financing in connection with the paving program." On August 27 a motion was passed by the city council "That the contract entered into between the city of Hill City, and the Fidelity National Bank and Trust Company for the sale of bonds, be and the same is hereby confirmed as per terms of contract on file in the office of the city clerk." On September 27 Frank Grecian presented to the mayor and council a petition, signed by 67 residents of the city, praying that the bonds be sold as provided by law to the highest bidder, in case the state school fund commission did not purchase them, and on the same day Grecian notified the city officials in writing that he had a reliable and responsible purchaser for such bonds in any

amount up to $100,000 at par for bonds bearing "considerably less than 4½ per cent interest," or at a price "reasonably above par," for bonds "bearing 4½ per cent or a higher rate of interest." The minutes of the council recited the presentation of the petition, and "as bonds had already been contracted, this petition was tabled."

Temporary notes, 44 in number, for the total sum of $125,227.70, were issued. The trust company has paid that amount to the city, and the city has paid such amount to the contractor and to the engineers. These temporary notes, when executed, bore a due date of June 1, 1926. They bore interest at the rate of 4¾ per cent from date to maturity, and Nos. 1 to 17, inclusive, provided that they should bear interest after maturity at the rate of 6 per cent, and Nos. 18 to 44, inclusive, provided that they should bear interest after maturity at the rate of 8 per cent until paid.

The city of Hill City owned a waterworks and electric light plant. At the time it was installed, some years ago, iron water pipes had been laid on or across the streets improved by the several paving projects above mentioned. The city officials thought the pipes might rust and need replacement, which could not well be done after the pavement was laid, and deemed it advisable to replace the iron pipes in such streets with lead pipes. On August 3, 1925, an ordinance was passed reciting in the preamble the street improvements authorized by project No. 1, and providing:

"That all water connections within the area of the proposed pavement and all properties not now connected but deemed advisable by the council shall be so connected with lead-pipe water connections under the supervision of the water superintendent.

"The cost of making such connections shall be considered a part of the cost of improving such streets and shall be paid for from funds derived from the sale of bonds for the improvement of said streets."

On August 11 a similar ordinance was passed with reference to street improvements in project No. 2. With reference to the other projects no ordinances were passed relating to the lead-pipe water connections, but in the completion of all of the projects (except No. 4) the iron pipes were removed and the lead pipes put in, at a total cost, as contended by plaintiff, of $6,975.45. Defendants admit that $3,672.78 for these lead-pipe connections was charged to the paving fund, but express a doubt as to whether the balance of the amount claimed by plaintiff was charged to that fund.

A few bills, aggregating $113, for the paving work, were paid from

the water and light fund. This is the sum which plaintiff seeks by the mandatory order to have restored to the water and light fund.

Turning now to the legal questions presented, plaintiff contends that the cost of the improvement of the water mains by the taking out of iron pipes and substituting lead pipes is not a proper charge in connection with the paving improvements. This contention must be sustained. The statute provides for the extension and improvement of the water system in plants municipally owned. We shall not stop to consider whether the proceedings should have been under R. S. 12-834 or R. S. 12-837, for the governing body of the city did not attempt to comply with either of these provisions. On behalf of defendants and of the intervener it is argued that the improvement of the water mains and connections deemed advisable by the governing body of the city prior to the laying of the pavement was a necessary cost of the paving, and in that connection cite *People v. City of Buffalo*, 137 N. Y. S. 464. In that case a narrow pavement was widened. In the opinion it was said:

"The work of moving lamp-posts and hydrants is necessary in connection with widening the pavement. If it were not done, the lamp-posts and hydrants would obstruct the new pavement. While it is not included in the plans and specifications nor in the contract, it is work which the commissioner of public works might do, if authorized thereto by the common council. City charter, §§ 271, 272, title X. When the common council ordered the improvement without other provision for this work, it, by reasonable implication, authorized the commissioner of public works to set back the lamp-posts and hydrants. When it ordered the expense to be included in the assessment, it provided for the payment thereof pursuant to section 272 of the charter. Section 279 of the charter authorizes the commissioner 'to lay water pipes' without advertising for proposals to do the work, although the expense may exceed $500, and moving the hydrants comes fairly within the meaning of the term 'to lay water pipes.'" (p. 466.)

Clearly this case cited does not support the action taken by the city officials in the case before us. There, by the provisions of the city charter, the common council had authority to order the removal of the lamp-posts and hydrants, and the court held that it did so; hence, the action was specifically authorized by law. Here there is no such authorization by statute for having the improvement of the water mains charged in connection with the paving, and the statutory procedure for the improvement of the water mains was not complied with. The defendants and the intervener also cited *Longworth v. Cincinnati*, 34 Ohio St. 101, but what was done there also

turned upon the construction of specific provisions of the statute and was authorized by such provisions. *Acklin v. Parker,* 29 Ohio Cir. R. 625, also is cited. That was a question of changing water boxes in the street. It was held the cost thereof was a legitimate item of expense in the street improvement, but the opinion does not disclose what caused the court to reach that conclusion; that is, whether it was the interpretation of some statute bearing upon the question. So none of these cases supports the position of the defendants and intervener. They also cite cases from other states, and *Bailey v. City of Wichita,* 108 Kan. 282, 196 Pac. 1070, to the effect that necessary engineering expenses and the installation of storm sewers for the drainage of the improved street are proper items of expense. There is no controversy about such items in this case; hence, the cases have no bearing. But defendants and the intervener contend even if this were not a proper paving expense, it is not charged in the assessment to property owners, but charged to the city at large; that the city could issue bonds for the improvement of the water mains, the bonds to be paid by taxation by the city at large; hence, that it is no greater expense to plaintiff to pay the bonds if issued as a part of the paving bonds, or if they were in a separate issue of waterworks. There is no merit in this contention. The city had no authority to levy taxes for one purpose and use the moneys collected for another (Const., art. 11, § 4). The statute provides how the waterworks bonds shall be issued. No attempt was made to follow the statute, and as a property owner the plaintiff is entitled to question an invalid issue of bonds. (R. S. 60-1121.)

Plaintiff contends that the contract for the sale of the bonds was void for the reason that it did not conform to the statute (Laws 1925, ch. 93), which apparently contemplates that the bonds shall first be offered to the state school fund commission, and if such commission does not purchase the bonds the issue may be advertised in the official paper and placed on sale for not less than par and accrued interest, or may be sold at public sale, and for the further reason that the contract for the sale of the bonds was for all bonds which might be issued for internal improvements on work commenced in the year 1925, when the city commission had for consideration only project No. 1, the cost of which would be approximately $50,000. Plaintiff further argues that the bonds could have

been sold at a more advantageous price. Our court has held valid and enforceable a contract for the sale of improvement bonds made before the bonds were offered to the state school fund commission. (*City of Washington v. Investment Co.*, 117 Kan. 15, 230 Pac. 311; *Junction City v. Bank*, 96 Kan. 407, 153 Pac. 28.) It is said in the argument that it is the practice to make contracts for the sale of bonds at or about the time the contract for work is made rather than to wait until the work is completed, for the reason that the city needs money on temporary notes to pay for the work as estimates are approved, and would have difficulty in financing the work otherwise, if indeed it could be financed at all. The most that can be said about this matter is that it was irregularly conducted. There was no evidence in the court below that the bonds could have been sold to better advantage. They were sold at the price authorized by statute. It is the function of the state, at the instance of the attorney-general or county attorney, to question the regularity of the proceedings of municipal officials. A private citizen and taxpayer has no standing to question such matters unless thereby his taxes are increased or he is otherwise financially injured. Since plaintiff failed to make a showing of such injury by reason of the contract for the sale of bonds, there is nothing concerning that of which he can complain. The same may be said of plaintiff's objection that appraisers were not appointed for each separate project, and that an assessment ordinance was not passed for each project separately. At best these matters are irregularities which do not concern plaintiff unless his taxes are increased or he is otherwise financially injured, and in this case plaintiff made no showing of such financial injury. Plaintiff complains that a small amount of the paving expense was paid from the water and light fund, and asked for an order that the sum be restored. This was denied, for the reason that the sum is inconsequential, on the authority of *City of Valdosta v. Harris*, 156 Ga. 490. But there is another reason why the ruling of the court in this respect is not erroneous. All of the expense of improving the water mains should have been paid from the water and light fund. The fact that only a small portion of it was so paid is not a reason why the amount paid should be turned back into the water and light fund.

Plaintiff contends that the assessment ordinance is void for the reason that it does not show that the appraisement and assessment were made upon each block separately, as the statute provides.

(R. S. 12-605.)   The ordinance does not show that the appraisement and assessment were not so made, and the natural presumption is that the appraisement and assessment were made in conformity to the statute.   There is no showing in this case that plaintiff's property would be appraised or assessed differently than it was if such appraisement and assessment should be made on each block separately, if we assume it was not so made.   It would be futile to require a new appraisement and assessment specifically showing that it was made upon each block separately without anything in the record to indicate that a different result would be obtained.   The trial court did not err in denying the injunction for this reason.

The intervener has appealed from the ruling of the court that it could collect only 4¾ per cent interest on the temporary notes from their respective dates until they are paid.   The intervener specially disclaimed any intent to collect 8 per cent after maturity on any of the notes, although some of them so provide, and says that some of the notes were so written by inadvertence, but does contend that since the contract for the purchase of the bonds and the carrying of temporary notes provided no due date for the temporary notes, and since a due date was later agreed upon between the city officials and the trust company, after which due date the notes should bear 6 per cent interest, and the notes were so drawn, that it should collect interest at the rate of 6 per cent after the due date of the note.   The difficulty with this argument is that the contract between the trust company and the city, of August 11, 1925, did in fact provide a due date for the temporary notes.   It provided for the issuance of temporary notes until the bonds could be delivered, and contained the provision: "We agree to carry your temporary notes at 4¾ per cent."   It seems no other reasonable interpretation could be given to that contract than that it was contemplated at the time the contract was made that the temporary notes would run until the bonds could be issued; hence, the date of the issuing of the bonds was the due date of the temporary notes, as provided by the contract.   The trial court correctly held that the intervener was entitled to interest on temporary notes at the rate of 4¾ per cent from their respective dates until the bonds were issued.

From what has been said it necessarily follows that the judgment of the court below will be affirmed in all respects except as to the amount paid for the improvement of the water pipes and connections.

As to this question the cause is reversed with directions to the court to ascertain, either from the record before it or by a new trial, the amount expended for the improvement of the water pipes charged to the paving improvement and deduct that from the bonds to be issued for that purpose. The amount of this cost should be paid from the water and light fund, if that is sufficient, but if it is not, the proper statutory steps should be taken to issue bonds for that purpose.