### CALHOUN COUNTY, FLA., v. ROBERTS.

### No. 10511.

Circuit Court of Appeals, Fifth Circuit.

June 1, 1943.

Millard F. Caldwell, Ben A. Meginniss, and Julius F. Parker, all of Tallahassee, Fla., and Marion B. Knight, of Blountstown, Fla., for appellant.

Luther W. Cobbey and John W. Bull, both of Tampa, Fla., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

By Chapter 16344, Laws of Florida, Sp. Acts of 1933, the County Commissioners of Calhoun County were authorized to issue bonds and borrow money with which to construct a bridge across the Apalachicola River between Calhoun and Liberty Counties, Florida. Under the authority of the statute the County Commissioners of Calhoun County pursuant to resolution adopted December 22, 1934, entered into a written contract with Allied Engineering Company for the performance by the latter of engineering services necessary in the construction of the bridge. The engineering corporation agreed to perform services necessary to the construction of the bridge, including the preparation of plans and specifications, supervision, etc., for the compensation of ten per cent of the cost of the bridge. Provision was made for payment of extra services, also. A retainer fee of $4,500 was to be paid upon the execution of the contract. A second payment of $31,300 was to be paid "out of the money obtained from the first payment made under the loan contract." $23,400 was to be paid "out of the money obtained from the second payment made under the loan contract." It was also provided that the engineering fees should be paid monthly during the progress of the work and in proportion to the amount of work until the sum of ten per cent of the total cost of the work was paid. Provision was made also for extra compensation in certain eventualities.

In the minutes of the Board of Commissioners of the County there appears, under date of December 22, 1934, the adopted motion of Mr. Harrell "that the contracts of Allied Engineering Corp. and Harrison F. McConnell be approved or accepted,

with the distinct understanding that Calhoun County will not be liable for any fees except those approved by the P. W. A. officials to be paid from the loan and grant."

The engineering company performed its services satisfactorily.

After making the contract the County entered into a contract with the Federal Public Works Administration whereby the latter agreed to purchase bonds of the County in the sum of $563,000, and to make to the County an outright grant of $399,-263. This contract provided that fees for engineering services would be subject to the approval of the State Director of the P. W. A. The Director refused to approve engineering fees of more than seven and one-half per cent of the cost of the construction of the bridge. Nevertheless, the engineering corporation continued to serve until the bridge was completed. It was paid $62,500, or practically seven and one-half per cent of the total cost of the bridge. It contends that it was entitled to be paid a total of $83,593.36. Mr. Roberts, General Manager of the engineering corporation, now its Receiver, admitted in his testimony that he never expected to get any money on the engineering fee from any other fund except that obtained by the County from the sale of bonds and from the grant, if the County was successful in getting the grant, but that it was the duty of the County to get the engineering fee out of the funds in question, else to pay the fee as contracted, and that having failed so to do the County is liable for the residue.

It appears that the bridge was completed and that there remained a surplus of $23,-726.49, which moneys were placed by the P. W. A. in the Atlantic National Bank of Jacksonville in the construction account of the County, with directions that this surplus be used in the purchase of, or the payment of principal and interest on, the bridge bonds of said County. It does not appear whether the above funds were derived from the grant or from the sale of the bonds, or whether the funds were from both sources and later commingled.

The engineering corporation, failing to receive payment out of the Loan and Grant Fund or from the County, brought suit through its Receiver, asserting that the County owed the plaintiff $35,232.36, including extra work fees of about $12,000; that there was on deposit in the Atlantic

National Bank of Jacksonville the sum of $23,726.49, which had been deposited in an account designated "Construction Fund of Calhoun County", and which said fund constituted "the residue of a trust fund deposited by Calhoun County for the purpose of paying the construction cost of said bridge"; and further alleging that all of the bills for the construction of the bridge had been paid with the exception of the sums due the plaintiff. The complaint sought to have this fund applied to the payment of the engineering corporation's indebtedness, alleging that "there is no other fund in the possession of the said County out of which plaintiff could collect the several claims hereinbefore set forth." The complaint prayed for an injunction to restrain the paying out of said funds and for a judgment against Calhoun County, and that, upon final decree, the said sum on deposit "be sequestrated and subjected to the payment of said judgment."

The defendants were Calhoun County and the Atlantic National Bank of Jacksonville, but the United States Attorney for the Northern District of Florida intervened, apparently for the purpose of contending that the money on deposit constituted a trust fund for the retirement of bonds and interest.[1]

The County interposed the defenses that the resolution of the County provided that the engineering corporation should receive only the fees allowed by the P. W. A.; that the engineering corporation, by continuing performance after the fixing of the fees by the P. W. A., and by other acts, waived the right to payment of the difference between seven and one-half per cent and ten per cent; and that the engineering corporation understood its entire fee was to be obtained from the loan and grant money.

The Court below held that the deposit in the Construction Account in the Jacksonville bank was a trust fund to be used solely for the purpose of paying principal and interest on the bonds, and could not be applied to the payment of the engineering fee. It further held: that the proof failed to show that the engineering corporation had knowledge of the resolution of the County Commissioners attempting to limit the engineering fees to such amount as was approved by the P. W. A.; that the engineering corporation had not waived its right to the additional two and one-half

---

[1] The intervention by the District Attorney is not in the record, but reference is made in the findings of fact of the trial Court thereto.

per cent; and that Chapter 16344, Laws of Florida, Sp.Acts of 1933, did not restrict the County in paying engineering fees solely out of funds derived from the bond issue. A general judgment against the County in the sum of $35,232.36 was rendered.

The County seeks reversal and urges upon this Court the following:

1. That the contract, so reduced to judgment, is the equivalent of a bond, which could not be valid without the holding of an election under Section 6 of Article 9 of the Constitution of Florida.

2. That the resolution of the County Commissioners attempting to limit the fees to those approved by the P. W. A. was binding.

3. That the engineers waived any right which they might have under the contract to recover fees in excess of the fees approved by the P. W. A.

4. That the engineering corporation admitted that it was intended by the contract that the engineers should receive only such fees as were approved by the P. W. A. and only from the proceeds of the loan and grant.

■ We shall dispose of all except the first ground urged upon us by saying that the Court below, on controverted questions of fact, found that the engineering corporation had no knowledge of the resolution of the County Commissioners attempting to limit the fees to those approved by the P. W. A., and that it was passed after the execution of the contract and after those representing the engineering corporation had departed. He found, as a matter of fact, that the engineers had not waived their right to claim engineering fees in excess of those fixed by the P. W. A., and that the evidence did not show that the engineering corporation intended to look solely to the P. W. A. and the loan money for its compensation. There is evidence to justify the findings of fact of the Court below and they will not be disturbed here.

The other ground urged here, but which appears not to have been stressed in the Court below, presents a serious question.

The bridge did not lie wholly within Calhoun County but extended over the river into Liberty County. A county is authorized to levy taxes only for county purposes. The building of a bridge, a large portion of which is in another county, requires express authorization from the Legislature. That authorization exists only under Chapter 16344, Laws of Florida, Sp. Acts of 1933. The Supreme Court of Florida, in State v. Calhoun County, 125 Fla. 263, 169 So. 673, dealing with this very bridge and this Act of the Legislature, said: "The statutory grant to Calhoun county of authority to construct the proposed bridge and its approaches and the authority to borrow money therefor (in a proper manner) may be within the power of the Legislature, such construction being by the statutory provisions in effect made a county purpose for Calhoun county, though a portion of the statutory utility is in Liberty county."

The "statutory provisions" referred to is Chapter 16344.

Since Chapter 16344 is the source of the power of the County to build the bi-county bridge, it is necessary for us to consider the provisions of that Chapter.[2]

---

[2] "Section 2. Said Calhoun County, through its Board of County Commissioners, is authorized to borrow money with which to construct said bridge and the approaches thereto, and * * * to issue and sell bridge bonds, or revenue bonds, * * * in a sufficient amount, to obtain the money necessary with which to construct said bridge and the approaches thereto. * * *

"No election shall be held in connection with the issuance of such bonds."

"Section 3. * * * The issuance and sale of such bridge bonds, or revenue bonds, *shall not constitute, or be, a general lien on real or personal property in said Calhoun County, or a general obligation of said County in any respect,* but shall be dependent on the lien security based on the bridge and approaches, and on the income from the operation of such bridge and approaches, as herein provided." (Emphasis added.)

"Section 5. Calhoun County, Florida, through its Board of County Commissioners, is * * * authorized to employ an attorney, or attorneys, and also an engineer, or engineers, to render such service as deemed necessary *in connection with matters mentioned in this Act.*" (Emphasis added.)

"Section 8. It is the intention of this Act to authorize Calhoun County, Florida, to borrow money from the United States Reconstruction Finance Corporation, or from others, to construct the bridges and approaches, * * * the same to be financed and operated as a self liquidating project * * *."

The Act clearly provided that the cost of construction of the bridge and approaches should be paid out of money borrowed from the sale of bridge bonds, or revenue bonds, and that the issuance and sale of such bonds should not constitute, or be, a general obligation of the County in any respect, but payment was to be secured solely by a lien on the bridge and the revenue derived therefrom. The Act authorized the construction of the bridge only as a self-liquidating project—to be financed and operated as a self-liquidating project.

The title to the Act contained this language: " * * * to provide that there shall be no general obligation against Calhoun County * * *."

■ It is plain from the Act and its title that the entire cost of the bridge was to be paid out of money borrowed by the issuance and sale of bonds, and that no part of the costs was to become a general liability.

■ Engineering services are an integral and necessary part of the cost of the construction of a bridge of such magnitude. It was necessary to have plans, specifications, estimates, and engineering supervision, etc., in order to build such a bridge and approaches.[3] The engineering services being a normal and necessary part of the cost of building the bridge, the County was not authorized under the Act to pay same except out of the proceeds of the sale of bonds, for which there was to be no general liability.

■ Bonds were issued in the sum of $563,000.00. The Act provided that no election would be necessary, but the Supreme Court of Florida, in the case of State v. Calhoun County, supra, held that under Section 6 of Article 9 of the Constitution of Florida these bridge bonds could not be issued, even though they were not to be a general obligation of the County, without a favorable election by the people. The people voted a bond issue of $563,000.00 with which to build the bridge—not $563,000.00 plus $35,232.36. They did not vote to make any indebtedness a general obligation of the County. For the Court now to engraft $35,232.36 in order to make up a deficiency in the bond issue would be to disregard the provisions of Chapter 16344,

supra, and the mandate of Section 6 of Article 9 of the Constitution of Florida.

■ The contract between the County and the engineering corporation provided for payment of a retainer fee of $4500.00 upon the execution of the contract. The contract was entered into prior to the sale of the bonds and prior to obtaining the loan and grant. It could not be seriously argued that it was the intention of the parties that this $4500.00 should be paid out of the proceeds of the bond issue or loan and grant. However, the County could only levy taxes for a county purpose. The building of a bridge or a part of a bridge in Liberty County is not, under the general law of Florida, a county purpose of Calhoun County. It was made a county purpose by Chapter 16344 (State v. Calhoun County, supra), but it seems to have been the purpose and intent of said Chapter that the entire cost of the bridge would be paid out of the loan money and no general obligation would be incurred against the County. Therefore, there seems to be no authority in the law of Florida, general or special, for the County to incur the obligation to pay the $4500.00 except out of money derived, under the authority of the Chapter, from the sale of bonds. It is true that Section 5 of the Special Act authorized the Board of County Commissioners to employ an engineer, but the employment of such engineer was "to render such service as deemed necessary *in connection with matters mentioned in this Act.*" (Emphasis added.) The vital matters mentioned in the Act were: (1) the issuance and sale of bonds, and (2) the building of a bridge, and (3) the repayment of the bonds from tolls without imposing a general obligation on the County. We are of the opinion, therefore, that although the parties, in making the contract, did not intend that the retaining fee of $4,500 should be paid from the proceeds of the bond issue, nevertheless, the County was without authority to make such a contract under the general law, and the Special Act of 1933 did not authorize such a payment except out of monies derived from the sale of bonds voted on, issued, and sold.

The Special Act provided for the construction of a toll bridge and for the repayment of the borrowed money from the

---

[3] Shaw v. City of Mayfield, 204 Ky. 618, 265 S.W. 13; Parsons v. City of Worcester, 234 Mass. 108, 125 N.E. 205; City of Tulsa v. Weston, 102 Okl. 222, 229 P. 108, 109; Bailey v. Henrion, 108 Kan. 282, 194 P. 928.

tolls. Section 8 of the Act provides that it was the intention of the Act to authorize the County to borrow money to construct the bridge and approaches, to be *financed* and operated as a self-liquidating project, until such time as the same may be taken over by some State or Governmental agency to be operated as a free bridge, *"provided satisfactory arrangement is made relative to any unpaid balance on the debt incurred hereunder."* (Emphasis added.)

The record is silent as to whether the bridge is being operated as a toll bridge, and we are not called upon to pass on the question of whether or not the engineering corporation, in the absence of estoppel, might require the payment of its fees out of the tolls provided by the Statute, or, if the bridge has been taken over by some State or Governmental agency under the provisions of Section 6 of the Special Act, whether the engineering corporation, unless estopped, might not require that satisfactory arrangement be made to pay out of the tolls any unpaid balance on the debt of the engineers lawfully incurred.

The final decree of the lower Court held that the plaintiff was not entitled to have the funds on deposit in the Construction Account in the Atlantic National Bank of Jacksonville subjected to the payment of its indebtedness. We are unable to ascertain from the record whether this deposit was derived from the grant or from the bond issue. If from the latter, it would appear that the engineering corporation, unless estopped, might be entitled to have any residue from the proceeds of the bond issue applied to its indebtedness. This would not be true as to any residue from grant money that may be on deposit, since the P. W. A. had a clear right to impose the condition that engineering fees should

not exceed seven and one-half per cent to be paid out of grant money.

We hold that the Court below was in error in rendering a general judgment against the County, and the entire judgment of the lower Court is reversed and vacated, without prejudice to the right of the appellee herein to apply to the Court below upon such notice as the Court shall require, to the United States Attorney for the Northern District of Florida, the Atlantic National Bank, and Calhoun County, within sixty days from the coming down of the mandate, for further inquiry to determine whether or not a portion of this deposit in the Atlantic National Bank of Jacksonville was derived from the proceeds of the bond issue, and, if so, whether such proceeds are subject to be applied toward the payment of the indebtedness found by the Court below to be due appellee.

McCORD, Circuit Judge (specially concurring).

I concur in the opinion but think there should be eliminated the paragraph, third from the end, which suggests, but passes, the question of "whether or not the engineering corporation, in the absence of estoppel, might require the payment of its fees out of the tolls provided by the Statute, or, if the bridge has been taken over by some State or Governmental agency under the provisions of Section 6 of the Special Act, whether the engineering corporation, unless estopped, might not require that satisfactory arrangement be made to pay out of the tolls any unpaid balance on the debt of the engineers lawfully incurred." I object to this paragraph because I believe recovery by the engineering corporation was, and is, limited to funds derived from the loan and grant.